691 So.2d 318 (1997)
Wallace A. HUNTER, et al.
v.
Gerald J. MEYERS.
No. 96 CA 1075.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
*319 Randolph W. Hunter, Baton Rouge, for Plaintiffs-Appellants Wallace A. Hunter, et al.
Stacey Moak, Baton Rouge, for Defendant-Appellee Gerald J. Meyers.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
Wallace A. Hunter and Julia Hamilton, residents of Louisiana, filed a lawsuit to withdraw, or reduce, the purchase price of a thoroughbred racehorse. The horse was bought from Gerald J. Meyers, a New York resident. The petitioners filed their suit in Louisiana. Mr. Meyers, defendant/appellee, filed a declinatory exception of lack of jurisdiction by the state of Louisiana over the person, and a peremptory exception of prescription. The district court granted the exception of lack of jurisdiction and dismissed the petition. The decision has been appealed by petitioners/appellants to this court. We reverse the decision of the district court, finding there were sufficient minimum contacts with the state of Louisiana to warrant jurisdiction by this state.

FACTS
The following factual information is gleaned from the stipulation of facts presented for purposes of the exceptions. Mr. Meyers, a New York resident, retained the services of a broker, Equistock, Ltd., through its president, Donald Brauer, to sell Mr. Meyers' *320 thoroughbred racehorse, Secret Bounty. Equistock, Ltd. was located in Cooper City, Florida. Upon learning that Secret Bounty was a Louisiana bred race horse,[1] Mr. Brauer, acting on behalf of Mr. Meyers, contacted two trainers in Louisiana to notify them that he was selling a Louisiana thoroughbred racehorse for $25,000.00. One of the trainers, Tom Amos, was the appellants/purchasers' trainer. Mr. Brauer faxed to Tom Amos the relative pedigree and racing performance history of Secret Bounty. Mr. Amos, thereafter, faxed the past performance and pedigree data to the attorney representing the purchasers. On November 2, 1994, Mr. Amos authorized a pre-purchase veterinarian examination. It was performed in New Jersey by a veterinarian suggested by Mr. Meyers' broker.
On November 3, 1994, Mr. Meyers' broker in Florida contacted one of the purchasers, Mr. Hunter, by telephone to discuss Secret Bounty, and the manner in which the purchase money should be wired. That same day, Mrs. Hamilton contacted her bank with instructions to wire to the seller's broker the purchase sum of $25,000, and an additional $2,000 payment to the broker. On November 4,1994, Mr. Meyers executed the original bills of sale before a notary public. The bills of sale were sent by Mr. Meyers to Mr. Brauer, who forwarded the bills of sale, as well as a copy of the agent's cashier's check to Mr. Hunter, one of the purchasers. Mr. Brauer requested that Mr. Hunter sign the bills of sale and return two originals via Federal Express to Mr. Brauer in Florida. Mr. Hunter received the bills of sale in Louisiana on November 8, 1994. He executed them in Louisiana, and returned them to Mr. Meyer's agent in Florida. Mr. Brauer, in turn, forwarded one original executed copy to Mr. Meyers in New York. Simultaneous with the acts of wiring the purchase money and transferring the bills of sale via Federal Express, the seller's agent, Mr. Brauer, arranged and set into motion the transportation of Secret Bounty from New Jersey to Louisiana. Secret Bounty arrived on November 8, 1994.
Thereafter, in December, 1994, Secret Bounty bled during a workout in Louisiana. He was placed on the medication list, and raced in four additional Louisiana races. During the last race, Secret Bounty bled profusely, notwithstanding the fact that he was on the drug "Lasix."[2] The petitioners' suit to rescind, and for damages, is based on Mr. Meyer's legal bad faith in his failure to disclose, prior to the sale, that Secret Bounty had a history of bleeding, and that the thoroughbred had been placed on the New Jersey Racing Commission Lasix list. Mr. Meyers' trainer in New Jersey knew that the horse had bled on October 25, 1994, at which time a veterinarian had authorized the administration of Lasix. Neither Mr. Meyers or his trainer had notified the purchasers that the thoroughbred had recently bled within such a short period prior to the sale. As separate grounds, petitioners allege that following the purchase, Secret Bounty, while in the hospital for surgery in Louisiana, was diagnosed with a ventricular septal defect in the heart, a redhibitory condition which rendered the horse totally unfit for thoroughbred racing.

LAW
An appellate court conducts a "de novo" review of the legal issue of personal jurisdiction over a nonresident by a Louisiana court. Babcock & Wilcox Company v. Babcock Mexico, 597 So.2d 110, 112 (La.App. 4th Cir.), writ denied, 600 So.2d 679 (La. 1992). The intent of Louisiana's long-arm statute is to procedurally extend personal jurisdiction of the Louisiana courts over nonresidents to comport with the due process clause of the Fourteenth Amendment of the United States Constitution. Jasper v. National Medical Enterprises, Inc., 94-1120, p. 4 (La.App. 1st Cir. 6/23/95); 657 So.2d 604, 607, writ denied, 95-1836 (La. 10/27/95); 661 So.2d 1347. The limits of Louisiana's long-arm statute and constitutional due process *321 are, thus, coextensive.[3]Superior Supply Company v. Associated Pipe and Supply Company, 515 So.2d 790, 792 (La.1987).
Louisiana's long-arm statute imposes personal jurisdiction over non-residents in the following pertinent parts:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state....
(4) Causing ... damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he ... derives revenue from goods used ... in this state.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
La. R.S. 13:3201
The United States Supreme Court has distinguished between two categories of personal jurisdiction in analyzing the due process clausegeneral and specific jurisdiction. Burger King Corporation v. Rudzewicz, 471 U.S. 462, 472-473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). General jurisdiction over a defendant involves a suit in which the jurisdiction does not arise out of, or relate to, the defendant's contacts with the forum state. Specific jurisdiction occurs when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contact's with the forum. deReyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 105 (La. 1991). Specific jurisdiction is the issue before us at this time. We, therefore, address the indispensable judicially imposed criterion of "minimum contacts."
The landmark case, International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), established the constitutional test for the application of personal jurisdiction to a nonresident. The United States Supreme Court held that personal jurisdiction could be constitutionally imposed if there were "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'... Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." International Shoe Company v. Washington, 326 U.S. at 316, 319, 66 S.Ct. at 158, 160.
Thereafter, in 1957, in McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the highest Court permitted personal jurisdiction over a Texas corporation, whose single contact with the California forum state was the mailing of a reinsurance contract offer to the California resident and the acceptance of the policy premiums mailed from California. The Court recognized the evolving nature of minimum contacts in the following cogent remarks:
Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.
McGee v. International Life Insurance Company, 355 U.S. at 222-223, 78 S.Ct. at 201.
Through the years, the United States Supreme Court has continued to broaden its interpretation of "minimum contacts" relative to the ongoing question of specific jurisdiction over an unconsenting out-of-state party to accommodate a changing society. In Burger King Corporation v. Rudzewicz, the Court recognized the personal jurisdiction of *322 a Michigan franchisee, in the franchiser's state of Florida, for breach of the franchise obligations in the operation of the franchised store in Michigan. Justice Brennan reviewed several reasons supporting legitimate personal jurisdiction over a nonresident who purposefully directs his activities toward forum residents. They can be summarized as follows: a state generally has a `manifest interest' in providing its residents with a convenient forum to enforce substantive rights or obligations by out of state actors; it may be unfair to permit individuals to sidestep having to account for the proximate consequences of their actions in the states in which they occurred; modern transportation and communications have made it significantly less onerous for a person to defend himself in a state where he engages in economic activity. Burger King Corporation v. Rudzewicz, 471 U.S. at 473-474, 105 S.Ct. at 2182-2183.
Nevertheless, the Court admonished that the "constitutional touchstone [which is not subject to any talismanic jurisdictional formulas] remains whether the defendant purposefully established "minimum contacts" in the forum State." Burger King Corporation v. Rudzewicz, 471 U.S. at 474, 485, 105 S.Ct. at 2183, 2189. In this regard, foreseeability of causing the injury alone is not the determining factor in this due process issue. The foreseeability that the defendant's action and affiliation with the forum State must be such that he should "reasonably anticipate being haled into court there." Purposeful availment requires that the contacts consist of a deliberate engagement in significant activities within a state, as opposed to a "random," "fortuitous," or "attenuated" relationship with the state seeking personal jurisdiction. Burger King Corporation v. Rudzewicz, 471 U.S. at 474, 475, 480, 486, 105 S.Ct. at 2183, 2186, 2189; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). However, the interpretation of the particular nature of activities deemed to fall within the parameters of "purposeful availment" has evolved to reflect the modernization of interstate electronic communication and transportation.
Thus, the pivotal question before us remains whether Mr. Meyer's activities, taken as a whole, reflect that he purposefully availed himself of the privilege of conducting activities with the state of Louisiana to the extent that he should "reasonably anticipate" out-of-state litigation. Burger King Corporation v. Rudzewicz, 471 U.S. at 474-475,105 S.Ct. at 2183. It is initially noteworthy that the nature of the racehorse business is typically characterized by activities occurring in more than one state. In this instance, Mr. Meyers lives in New York; Secret Bounty was bred in Louisiana; Secret Bounty's recent races were in the state of New Jersey; Mr. Meyer's broker for the sale of Secret Bounty is located in Florida; the purchasers are located in Louisiana. It is also not fortuitous that Secret Bounty was sold to a buyer in Louisiana. The stipulated facts were that Secret Bounty had been bred in Louisiana. This territorial distinction renders him uniquely appealing to a Louisiana purchaser. A locally bred equine automatically qualifies for potentially greater purses in particular Louisiana races. Mr. Meyers, through his broker, clearly targeted Louisiana as the situs for the sale of his thoroughbred racehorse. A buyer in Louisiana was clearly the best prospect for an animal bred in this state. The broker specifically contacted two trainer/agents in Louisiana, via telephone, for the purpose of finding a Louisiana buyer for Secret Bounty. There was no evidence that prospective purchasers in other states were contacted.
Also significant is the ongoing business relationship between the seller's broker and the buyers' trainer, who acted on behalf of the purchasers herein. The seller's agent had solicited numerous contracts with the buyer's agent in the past, such that he had an ongoing business relationship with the agent in Louisiana. The activities of the seller's agent are imputed to the seller. Ward v. Pennington, 434 So.2d 1131, 1137 (La.App. 1st Cir.), writs denied, 438 So.2d 572, 576 (1983); La. C.C. art. 2985.
The performance history was specifically sent on behalf of the seller to the state of Louisiana. After the initial telephone contact by the seller's agent to the agent of the *323 buyers, the seller's agent presented the buyers' trainer with the relative pedigree and racing performance history of Secret Bounty, via facsimile communication. Thereafter, this same information was faxed by the buyers' trainer to the buyers' attorney in the state of Louisiana. It was received and reviewed by parties acting on behalf of the buyers in Louisiana. This contact is particularly important because the purchasers allege defendant's bad faith omission of a material fact in the racing performance history. After reviewing the performance history and relative pedigree, the purchasers accepted the offer to purchase Secret Bounty for $25,000 in Louisiana. The sale transaction occurred in Louisiana when they informed the bank in Louisiana to wire the funds to the seller's agent in Florida. La. C.C. art. 2456.
We find that there were minimum contacts with this state, as evidenced by: directed solicitation to Louisiana residents, the ongoing business relationship between the agents for the buyers and the seller, negotiation with Louisiana residents via fax and telephone to execute the contract at issue, execution of the contract in this state, and the fact that the alleged omission of material facts were based on documents that were deliberately sent on behalf of the seller to petitioners in Louisiana. The contacts were not fortuitous or the result of unilateral activity of an unrelated third person. Superior Supply Company v. Associated Pipe and Supply Company, 515 So.2d 790, 797 (La.1987). These acts cumulatively involved the deliberate engagement of significant activities within a state, as opposed to an "attenuated" affiliation with the forum. See International Shoe Company v. Washington, 326 U.S. at 318, 66 S.Ct. at 159, de Reyes v. Marine Management and Consulting, LTD., 586 So.2d at 106 (La.1991).
Mr. Meyer's alleged failure to supply material information upon which the residents would enter into the contractual agreement, caused foreseeable injury to a Louisiana resident. Our state Supreme Court has pronounced that this state has a manifest interest in providing Louisiana residents with a convenient forum when a non resident who solicits business in this state and, thereafter, breaches the contractual agreement. Superior Supply Company v. Associated Pipe and Supply Company, 515 So.2d at 797. Other than personally setting foot on this state's `terra firma,' Mr. Meyer had undeniably demonstrated a presence in Louisiana by his solicitous transmissions, which were physically presented in Louisiana. The alleged contractual omission and resulting damages to the appellants are inextricably linked to significant activities that occurred in Louisiana.
When minimum contacts exist, the absence of physical contacts cannot defeat personal jurisdiction. Burger King Corporation v. Rudzewicz, 471 U.S. at 476, 105 S.Ct. at 2184. In this regard, our colleagues on the 4th and 5th circuit courts of appeal have recently ascribed personal jurisdiction in instances where the contacts were effected by mail and electronic communication. It has been specifically observed that "[m]odern technology permits a party to communicate, negotiate and perfect a contract without a face to face meeting or crossing state lines. Facsimile machines expedite commerce and often preclude travel between states." Bordelon, Hamlin, Theriot & Hardy v. Burlington Broadcasting, LTD., 94-1839, p. 7 (La. App. 4th Cir. 3/16/95); 652 So.2d 1082, 1085; see also Traigle v. Imhoff, 96-325, 96-326, 96-327, p. 5-6 (La.App. 5th Cir. 10/1/96); 683 So.2d 766, 769; Burger King Corporation v. Rudzewicz, 471 U.S. at 476,105 S.Ct. at 2184.
Upon the establishment of minimum contacts, there exists a prima facie case that personal jurisdiction is reasonable. The defendant then bears the burden to demonstrate that jurisdiction would be unreasonable, i.e., it would contravene "fair play and substantial justice." Burger King Corporation v. Rudzewicz, 471 U.S. at 476-477, 105 S.Ct. at 2184-2185; de Reyes v. Marine Management and Consulting, LTD., 586 So.2d at 106.
The district court, therefore, erred in its determination that there were insufficient minimum contacts by Mr. Meyers to extend personal jurisdiction in Louisiana. The judgment maintaining the exception of lack of jurisdiction is reversed, and the case is remanded for proceedings consistent with this *324 finding. Costs of this appeal are assessed against defendant, Gerald J. Meyers.
REVERSED AND REMANDED.
NOTES
[1] A Louisiana bred racehorse is entitled to extra purses when it finishes well in certain races in Louisiana.
[2] Lasix is a drug that is used to control bleeding of a thoroughbred racehorse.
[3] Acts 1987, No. 418, effective September 1, 1987 was adopted by the legislature to amend La. R.S. 13:3201 and add Subsection B.