791 So.2d 1266 (2001)
A & L ENERGY, INC.,
v.
PEGASUS GROUP, Central Self-Storage Investor, III, CSS-Hempstead and First American Title Insurance Company.
No. 2000-C-3255.
Supreme Court of Louisiana.
June 29, 2001.
*1268 Mark A. Begnaud, Kenneth D. McCoy, Jr., McCoy, Roberts & Begnaud, Natchitoches, for Applicant.
Deborah S. Baukman, Mayer, Smith & Roberts; Steven C. Polgar, J. David Garrett, Shreveport, for Respondent.
TRAYLOR, J.[*]
We granted a writ of certiorari to determine whether this state may exercise *1269 personal jurisdiction over a nonresident corporate defendant who entered into a purchase agreement with a Louisiana corporation regarding commercial property located in Texas. For the reasons below, we reverse the judgment of the court of appeal, and remand to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY
In the spring of 1999, the president of A & L Energy, Inc. ("A & L"), came across an advertisement in the Central Edition of the Wall Street Journal listing certain commercial real estate for sale in Houston, Texas.[1] A & L responded to the advertisement by calling the listed telephone number. After this initial contact, A & L and Pegasus Group ("Pegasus"), a California company that owned the property, continued to communicate by telephone and facsimile. During these communications, Pegasus provided written financial information on the property, including past and projected future rental income, property taxes paid, and summary reports of assets and liabilities.
At some point during these communications, A & L hired an attorney to draft a proposed purchase agreement and sent the agreement to Pegasus. The parties subsequently negotiated the conditions of sale and purchase price via facsimile. On June 14, 1999, A & L entered into an "Agreement of Purchase and Sale" of the real estate with Pegasus. Among other things, the agreement contained a choice of law provision specifying Louisiana law, except for matters regarding title, which would be governed by Texas law. Pursuant to the agreement, A & L paid deposits, or earnest money, of $30,000 to First American Title Insurance Company ("First American") as escrow agent, and $10,000 to Pegasus. Apparently, these funds were deposited in banks in Texas and California.
Moreover, the agreement provided a 45 day inspection period, in which A & L could terminate the agreement for any reason and its earnest money would be returned. During the inspection period, A & L notified Pegasus in two separate letters of its decision to terminate the agreement. However, Pegasus refused A & L's request to return the earnest money held by it or First American based on A & L's alleged failure to comply with the notice provisions in the agreement.
On September 24, 1999, A & L filed suit in Caddo Parish, Louisiana, against four nonresident parties: Pegasus, a California legal entity;[2] Central Self Storage Investors, III, a California limited partnership (CSS); CSS Hempstead, also a California limited partnership (CSS Hempstead); and First American, a title insurer authorized to do business in Louisiana and Texas. In the suit, A & L sought the return of its earnest money, interest, and attorney fees pursuant to the terms of the contract.
On November 3, 1999, Pegasus, CSS, and CSS Hempstead jointly filed exceptions to personal and subject matter jurisdiction. In opposition to the exceptions, A & L filed an affidavit by Rex Bryan, a principal in Lea Hall Properties, the broker agent for A & L, setting forth the *1270 actions in Louisiana that pertained to the agreement.
In May 2000, the district court sustained the exceptions based on written briefs submitted by the parties. The court below found that although the parties to the contract agreed that Louisiana law would apply to resolve disputes, the agreement did not provide the court with subject matter or personal jurisdiction under the facts presented.[3]
The plaintiff sought review with the second circuit. A & L Energy v. Pegasus Group, et al., 34,222 (La.App. 2 Cir. 11/3/00), 771 So.2d 248. The court of appeal affirmed, and found that the contract executed between the parties was "an isolated transaction involving the sale of real estate property in another state" which failed to establish personal jurisdiction through sufficient minimum contacts with Louisiana as the forum state. The second circuit further found that requiring California defendants to defend themselves in Louisiana in a lawsuit concerning Texas real estate would offend traditional notions of fairness and justice. After concluding that Louisiana courts lacked personal jurisdiction over the defendants, the court of appeal pretermitted the issue of subject matter jurisdiction. Subsequently, this court granted a writ of certiorari to review the correctness of that decision. A & L Energy v. Pegasus Group, et al., 00-3255 (La.2/2/01), 783 So.2d 376.

DISCUSSION
The Louisiana long-arm statute, La. R.S. 13:3201, provides for the exercise of personal jurisdiction over a nonresident defendant by stating that:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
. . . .
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
By the legislative enactment of La. R.S. 13:3201(B), the limits of the Louisiana long-arm statute have become co-extensive with the limits of constitutional due process. See Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188, 1192 (La.1987). Thus, the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements. See Superior Supply Company v. Associated Pipe and Supply Company, 515 So.2d 790 (La.1987).
Pursuant to International Shoe and its progeny, the bedrock principles for personal jurisdiction over a nonresident defendant requires that the defendant "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This fundamental test to satisfy constitutional due process requires that a court evaluate the quality and nature of the defendants' activities in the forum state to determine whether such contacts justify the state's exercise of its judicial *1271 power over the person. Id. at 319-21, 66 S.Ct. at 160.

Constitutional Due Process
The due process test first enunciated in International Shoe has evolved into a two-part test, the first part being the "minimum contacts" prong, which is satisfied by a single act or actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The nonresident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This "purposeful availment" requirement ensures that the nonresident defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
The second part of the due process test centers around the fairness of asserting jurisdiction over the defendant. Even when minimum contacts exist, the exercise of personal jurisdiction over a nonresident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316, 66 S.Ct. at 158..

Specific versus General Jurisdiction
In interpreting the due process clause, the United States Supreme Court has recognized a distinction between two types of personal jurisdiction, namely "general" and "specific" jurisdiction. de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La.1991). Specific jurisdiction over a nonresident defendant is appropriate when that defendant has purposefully directed its activities at residents of the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. Burger King, 471 U.S. at 473, 105 S.Ct. at 2182 n. 15. General jurisdiction, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiffs cause of action, are continuous and systematic. Id.
We agree with the court of appeal's classification of this case as one dealing with the issue of specific, not general, jurisdiction. The record before us fails to establish that the nonresident defendants had "continuous and systematic" contacts with the state of Louisiana, which would make general jurisdiction appropriate. However, we reiterate that the classification of general versus specific jurisdiction merely serves as an analytical tool to categorize the degree of interrelation between the defendant's activities, the forum, and the cause of action; the same two-part due process evaluation must be conducted considering the facts in each individual case. de Reyes, 586 So.2d at 109.

Minimum Contacts
The primary issue in this case is whether the "minimum contacts" prong of the due process test can be met when the parties corresponded by electronic means to arrive at a contract for purchase of real estate located in another jurisdiction. The determination of whether minimum contacts exist requires a factual examination of the "relationship among the forum, the *1272 defendant, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). The defendants argue that the only factor in support of exercising jurisdiction is the choice of law provision electing Louisiana law, which is insufficient to satisfy minimum contact requirements. While we agree that a choice of law provision alone is insufficient to establish the requisite minimum contacts, the choice of law provision coupled with other facts in this case can do so.
In cases involving contracts, the exercise of jurisdiction requires an evaluation of the following factors surrounding the contract and its formation: (1) prior negotiations between the parties; (2) contemplated future consequences of the contract; (3) the terms of the contract; and (4) the parties' actual course of dealing. See Burger King, 471 U.S. at 477-79, 105 S.Ct. at 2184-2186. An individual's contract with an out-of-state party alone cannot establish minimum contacts in the home forum. Id.
In concluding that the defendants initially "reached out" to the plaintiff through the Wall Street Journal, we disagree that the advertisement was fortuitous, rather than targeted activity toward Louisiana residents. The defendants advertised in the Central Edition of the Wall Street Journal, presumably designed to target consumers in the central United States, in relatively close proximity to the real estate for sale in Texas. Bryan's affidavit confirms that the edition at issue was delivered to Shreveport. Defendants offered no evidence to prove that the advertisement ran in other editions of the Wall Street Journal to support the argument that the advertisement was made to a national audience, or that the advertisement had "worldwide circulation."
More importantly, once the plaintiff made contact based on the advertisement, the contract executed between the parties was the product of extensive negotiation via telephone, facsimile, and written documents sent by overnight couriers between the California defendants and the Louisiana plaintiff. Prior to executing the contract, the defendants provided significant amounts of financial information to show the commercial viability of the Texas property as a rental investment property. This information correlated directly with the plaintiff's decision to purchase the property.
After the agreement was executed, the defendants continued to provide the plaintiff with financial information on the property. While the defendants argue that the contract provided for inspection of documents to occur at the Seller's location or the location of the property, the parties' actual course of dealing continued as it had before the agreement was executed.
Further, the terms of the contract support an exercise of personal jurisdiction over the defendants. A "choice-of-law" clause of the contract freely negotiated between the parties designated Louisiana law as the law of the contract. Further, the only location specifically listed for performance under the agreement required that the title insurance commitment be "secured by the Seller, in coordination with the Purchaser's attorney, through the office of the Escrow Agent, and the order for the commitment shall be placed only through the New Orleans regional office of First American Title Insurance Company...." (Emphasis added).
We additionally note the fact that the California defendants retained First American as the escrow agent, a corporation designated to act on behalf of the defendants, who happens to be authorized to do business both in Texas and Louisiana. For performance of the contract, the parties *1273 were to execute the closing at the offices of the escrow agent, who apparently has offices in both Texas and Louisiana.
We find the physical location for execution of the contract to be inconclusive in determining personal jurisdiction. See Hunter v. Meyers, 96-1075 (La.App. 1st Cir.3/27/97), 691 So.2d 318. In today's commercial world, business deals are executed routinely with the parties never meeting face to face. The execution of the contract in this case took place in Louisiana and California when each party signed the contract on June 14th, 1999.
Lower court decisions cited by the plaintiff that consider facts similar to those in this case align with our decision today. See, e.g., Griffith v. French, 97-2635 (La. App. 1st Cir.12/28/98), 723 So.2d 1140, writ denied, 99-0220 (La.3/19/99), 740 So.2d 116 (finding minimum contacts sufficient to exercise personal jurisdiction over an out-of-state lawyer who solicited class-action plaintiffs in Louisiana through telephone calls and mailings, and mailed them a contract to sign, even though his offices were in Wisconsin, the class-action suit was filed in New York, and there was no evidence that the attorney ever set foot in this state); Bordelon, Hamlin Theriot v. Burlington Broadcasting, 94-1839 (La.App.4th Cir. 3/16/95), 652 So.2d 1082 (finding business negotiations through telephone calls, facsimiles, and mailings were sufficient to satisfy minimum contacts requirements); Traigle v. Imhoff, 96-325 (La.App. 5th Cir.10/1/96), 683 So.2d 766 (finding minimum contacts where Arizona seller of ostrich eggs, with no offices in Louisiana, solicited through an advertisement placed in a magazine with Louisiana subscribers, and defendants corresponded with Louisiana residents by mail and fax).
The defendants' contacts were not so attenuated to such a degree that they should not "reasonably anticipate being haled into court," World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567, in this state simply because the contract in question contemplated an "isolated" sale of land. While the location of the real estate arguably would support a finding of personal jurisdiction by a Texas court, the location of the subject matter involved under the contract is not, in our view, outcome-determinative.
The alleged breach of contract involves the termination of the agreement and whether the plaintiff followed the notice requirements. The letter requesting termination indicates that the plaintiff terminated the agreement because additional financial information received after the agreement was executed indicated a less lucrative deal than the plaintiff originally believed. While we make no opinion on the merits, we note the substance of the argument to reject the idea that the physical location of the property in Texas is a material issue in this case. See, e.g., Hunter, 691 So.2d 318 (finding the requisite minimum contacts to create Louisiana personal jurisdiction based on negotiations concerning a sale of a horse located in New Jersey by a New York resident to a Louisiana resident via a Florida broker, even though neither the broker, the seller, nor the horse was located in Louisiana).
The court of appeals and defendants' reliance on Calahan v. Haspel, 99-44 (La. App. 3d Cir.5/5/99), 732 So.2d 796, was misplaced. In that case, Louisianians, who owned property in Texas, entered into a lease agreement with Texans while all parties were physically present in Texas. When the Texas renters defaulted, the property owners filed suit in Louisiana. However, in that case, the only real contact the defendants had with Louisiana occurred when the defendants remitted lease payments to a Louisiana mailing address, or traveled to visit family in Louisiana. *1274 Because the agreement was both negotiated and consummated outside Louisiana, the lower court rightly found that the defendants' contacts with this state were too attenuated because the contacts with the forum state were irrelevant to the core dispute.
In the present case, however, the extensive negotiations leading to the purchase agreement, the contract's express terms, and the defendants' hiring of an agent authorized to do business in Louisiana hardly describe a "random," "fortuitous," or "attenuated" relationship with this state. Hunter, 691 So.2d at 322; Burger King, 471 U.S. at 474, 475, 480, 486, 105 S.Ct. at 2183, 2186, 2189; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). Moreover, unlike the individuals involved in Calahan, the parties to this dispute are sophisticated commercial corporations dealing in multimillion dollar commercial real estate. The defendants were fully aware that they were dealing with Louisiana residents and voluntarily subjected themselves to Louisiana law.
Thus, considering all these factors, Pegasus "purposefully avail[ed] itself of the privilege of conducting activities within [this state]." Burger King, 471 U.S. at 475, 105 S.Ct. at 2183. Undoubtedly, through this purposeful availment, Pegasus "should reasonably [have] anticipate[d] being haled into court" in Louisiana. World Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567.
Once the plaintiff meets his burden of proving minimum contacts, the burden shifts to the defendants to prove the assertion of jurisdiction would be so unreasonable in light of "traditional notions of fair play and substantial justice" to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum. de Reyes, 586 So.2d at 107.

Fair Play and Substantial Justice
In determining the issue of fundamental fairness, we must examine (1) the defendant's burden; (2) the forum state's interest in the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. Asahi, 480 U.S. at 112, 107 S.Ct. at 1032; World Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. at 564-565. Those considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than that required otherwise. Burger King, 471 U.S. at 477, 105 S.Ct. at 2185. The fairness component is comprised mainly of the burden on the defendant to defend a suit in the forum minus the interests of the plaintiff and the state to have the suit litigated in the forum. de Reyes, 586 So.2d at 107.
In light of these considerations, we conclude that the assertion of jurisdiction over these defendants hardly offends "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316, 66 S.Ct. at 158. For the California defendants, they are faced with the same inconveniences whether they must litigate in Louisiana or Texas.
In contrast, Louisiana has a significant interest in ensuring that its resident citizens are afforded the protections of Louisiana law. While we acknowledge that courts in every state routinely apply the law of other jurisdictions, we see no reason for Texas to apply Louisiana law to a breach of contract action simply because the subject matter of the contract is physically located in Texas.

*1275 Subject Matter Jurisdiction

The defendants contend that Texas has subject matter jurisdiction because both the immovable property involved in the sale and the bank holding the disputed funds are located there. Like their position on personal jurisdiction, the defendants appear to argue that because another state has subject matter jurisdiction, Louisiana is precluded from asserting jurisdiction. However, La. Const. art. V, § 16(A) vests jurisdiction over all civil and criminal matters in the courts of Louisiana except as otherwise authorized by the Constitution. A cause of action alleging breach of contract, regardless of the contract's subject matter, is a civil matter falling within our jurisdiction. Accordingly, the defendants' exceptions to subject matter jurisdiction are overruled.

DECREE
Accordingly, we reverse the Second Circuit Court of Appeal and the trial court judgments. The case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
KIMBALL, J., dissents and assigns reasons.
KIMBALL, J., dissenting.
I respectfully disagree with the majority's conclusion that the actions of the foreign defendants here were sufficient to make them subject to personal jurisdiction in Louisiana. In my view, the majority overlooks the importance of the fact that the business relationship between the parties began when the Louisiana resident reached out from this forum to contact the foreign defendants.
La. R.S. 13:3201, the statutory basis for Louisiana's exercise of personal jurisdiction over nonresidents, provides in pertinent part as follows:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
* * *
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
This court recently confirmed that, under La. R.S. 13:3201(B), the Louisiana longarm statute and constitutional due process are coextensive, such that "`the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements.'" Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126 (La.4/13/99), 731 So.2d 881 (quoting Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188, 1192 (La.1987)).
Ruckstuhl, this court's most recent pronouncement on the issue of personal jurisdiction, provides the framework for analyzing the issue of personal jurisdiction over a nonresident defendant. In Ruckstuhl, we employed a two-step analysis: (1) First, the plaintiff must establish that the defendant had sufficient minimum contact with the forum, by which he purposefully avails himself of the privilege of conducting activities within the forum; (2) If the plaintiff proves the defendant had sufficient contact with the forum, a presumption of reasonableness of jurisdiction arises, and the burden shifts to the defendant to show that the assertion of jurisdiction based on the defendant's contacts with the forum would *1276 be unreasonable in light of traditional notions of fair play and substantial justice. 731 So.2d at 885-86 (citing United States Supreme Court cases).
The facts of this case are neither substantially disputed nor particularly complex. Defendant Pegasus Group (Pegasus), a California company, advertised in the Wall Street Journal for the sale of Texas real estate.[1] Plaintiff A & L Energy, Inc. (A & L), a Louisiana corporation, saw the advertisement and called Pegasus. There was then a period of negotiation between Pegasus and A & L involving telephone, fax and mail communication, after which the parties agreed to the sale of the Texas real estate. The parties executed a contract for the sale of the property, which contract provided that Louisiana law would govern any dispute. Funds were then transferred from A & L's Louisiana accounts to Texas and California banks.
In concluding that Pegasus had sufficient minimum contacts with Louisiana, the majority rests its decision on several of these facts. First, the majority points to Pegasus' advertisement in the central edition of the Wall Street Journal, "presumably designed to target consumers in the central United States, in relatively close proximity to the real estate for sale in Texas." (Op. at p. 1272.) Next, the majority cites Pegasus' negotiations with A & L after A & L had contacted Pegasus to answer the advertisement. Finally, the majority notes that the contract for sale of the property included a "choice-of-law" section providing that Louisiana law would govern any dispute between the parties.
The majority finds that these three factors, when considered together, constitute sufficient minimum contacts by Pegasus with Louisiana. In support of this finding, the majority cites three decisions of the courts of appeal which purportedly "align" with the majority decision. (Op. at p. 1273.) Close examination of these cases and others, though, reveals an important distinction: The cases finding sufficient contacts between the foreign defendants and this forum each involved a defendant who reached into Louisiana for the specific purpose of making contact with a resident or residents of this state.
In Griffith v. French, 97-2635 (La.App. 1 Cir. 12/28/98), 723 So.2d 1140, a Wisconsin attorney filed a class action in New York on behalf of investors, some 70 individuals in 23 states (one of which was Louisiana), in a Texas real estate scheme. When class certification was denied, the Wisconsin attorney solicited the Louisiana plaintiffs individually about representation. He mailed the Louisiana plaintiffs a retainer agreement, which they executed in Louisiana and returned to the attorney, along with a $500.00 fee. During his representation of plaintiffs, the Wisconsin attorney corresponded with them by mail and solicited additional legal fees. He was never physically present in Louisiana.
The district court sustained the Wisconsin attorney's exception of lack of personal jurisdiction, and the court of appeal reversed. The court found that the attorney had solicited business in the state, and thus availed himself of the benefit of doing business in Louisiana. What distinguishes Griffith from the instant case is the fact that the Wisconsin attorney in Griffith personally contacted the Louisiana plaintiffs to solicit them as clients, while here the Louisiana plaintiffs contacted the defendants based on an advertisement in a national publication.
*1277 In Traigle v. Imhoff, 96-325 (La.App. 5 Cir. 10/1/96), 683 So.2d 766, Louisiana plaintiffs invested money with a Louisiana defendant as part of an ostrich egg venture. When the deal soured, plaintiffs sued defendant, and defendant filed a third party demand against an Arizona ostrich ranch, asserting that the ranch had converted plaintiffs' funds. The ranch was organized as an Arizona corporation and had no offices or registered agent for service of process in Louisiana. The ranch filed an exception of lack of personal jurisdiction, arguing that, while there was a contract in effect between the ranch and the plaintiffs, neither the ranch nor the ostriches were ever in Louisiana, and the ranch thus had no minimum contacts with this state.
The district court found that personal jurisdiction was lacking, but the court of appeal reversed. The court of appeal found that the ranch had two key contacts with Louisiana: the ranch was involved in a joint venture with the LA defendant, and the ranch advertised its services in a national magazine with several subscribers in Louisiana. A & L here suggests that Traigle stands for the proposition that a foreign defendant can open himself to personal jurisdiction simply by advertising its services in a national magazine and then contracting with a Louisiana resident based on those advertisements, but there was more contact with Louisiana in Traigle than there was here, i.e., the existence of a joint venture between the ranch and the Louisiana defendant.
In Bordelon, Hamlin, Theriot & Hardy v. Burlington Broadcasting, 94-1839 (La. App. 4 Cir. 3/16/95), 652 So.2d 1082, a Louisiana attorney with expertise in FCC issues was contacted by an Iowa attorney whose client (an Iowa broadcaster) needed an experienced FCC lawyer. Negotiations between the attorneys was via telephone, fax and mail. The Louisiana attorney made one trip to Iowa, but the Iowa attorney never came to Louisiana. The Louisiana attorney did the substantive work on the case in New Orleans; the work and revisions were then sent back and forth between Iowa and New Orleans. The Louisiana attorney sued the Iowa attorney and the Iowa broadcaster for legal fees, and the Iowa defendants excepted to personal jurisdiction.
The city court maintained the defendants' exception of lack of personal jurisdiction, and the court of appeal reversed, finding that there were sufficient contacts between the Iowa defendants and Louisiana. While Bordelon is similar to the instant case in that the defendants never entered Louisiana, the key distinction is that the defendants in Bordelon reached into this forum to personally contact the Louisiana attorney; the Louisiana attorney did not call the Iowa defendants to offer his services.
Another analogous case cited by the majority is Hunter v. Meyers, 96-1075 (La. App. 1 Cir. 3/27/97), 691 So.2d 318, which involved the purchase of a horse by Louisiana residents from a New York resident. In Hunter, the New York seller retained a Florida broker to sell his racehorse. The broker contacted two trainers in Louisiana to notify them of the sale. One of the trainers was the trainer for the Louisiana purchasers, and he informed them about the horse for sale. The Florida broker eventually contacted the Louisiana purchasers directly, and negotiations were conducted via phone, fax and mail. A bill of sale was signed in Louisiana by the purchasers and returned to the Florida broker. On learning that the horse had medical problems, the Louisiana purchasers sued to reduced the purchase price, and the defendants excepted to personal jurisdiction.
The district court granted the exception and the court of appeal reversed. The *1278 court of appeal focused on the existence of an ongoing relationship between the seller's broker and the Louisiana trainers, as well as the fact that the seller (through his agent) directly solicited the sale in Louisiana. Again, contrary to the instant case, the foreign defendants in Hunter purposefully reached into the forum to initiate contact with Louisiana residents.
What distinguishes the instant case from these earlier pronouncements on personal jurisdiction is the fact that here the Louisiana resident initiated contact with the foreign defendant. Pegasus did not reach into this forum to contact A & L to offer the Texas real estate for sale. Rather, Pegasus placed an advertisement in a newspaper of broad circulation, and A & L reached out from this forum to contact Pegasus. The business relationship between the parties was initiated by the Louisiana resident, A & L, and was based on a lone real estate sale. Lacking some purposeful availment by Pegasus of the privilege of doing business in this forum, I cannot agree with the majority that Pegasus had sufficient contact with Louisiana to subject it to personal jurisdiction here. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183-2184, 85 L.Ed.2d 528 (1995).
Additional Louisiana and federal cases support the proposition that being contacted by a Louisiana resident to contract for property or services will be insufficient to subject a nonresident to personal jurisdiction in this forum. See, e.g., Landry v. Gibbens, 95-0379 (La.App. 4 Cir. 11/16/95), 665 So.2d 1176 (California heirloom seller, who advertised in specialized national magazine but had made no prior sales in Louisiana, not subject to personal jurisdiction); Dickson Marine, Inc. v. Panalpina, Inc., 961 F.Supp. 947 (E.D.La.1997) (finding no personal jurisdiction over foreign ship repairer with no operations in this state where contact was initiated by Louisiana company); St. Martin & Mahoney v. Patton, 863 F.Supp. 311 (E.D.La.1994) (finding no personal jurisdiction where Louisiana purchaser contacted Michigan seller to purchase his airplane, where seller had listed his plane with a national broker and advertised in a national publication, but had no contacts with Louisiana and was not a professional seller of airplanes).
The majority today essentially holds that a foreign defendant who negotiates and contracts with a Louisiana resident will always be subject to personal jurisdiction in this forum, even when the Louisiana resident reaches out from this forum to do business with the foreign defendant. In my view, this result is contrary to the "traditional notions of fair play and substantial justice" underlying the principle of long-arm jurisdiction. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). As such, I respectfully dissent from the majority opinion and would affirm the judgment of the court of appeal, sustaining Pegasus' exception of lack of personal jurisdiction and dismissing A & L's suit.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon;

Judge Felicia Toney Williams, of the Second Circuit Court of Appeal, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson.
[1] The subject properties were two self-storage facilities.
[2] According to A & L's petition, Pegasus was initially an undisclosed agent for CSS and CSS-Hempstead.
[3] The judgment also provided that the parties could agree to transfer the action to a court of appropriate jurisdiction within 15 days of the judgment becoming final. Otherwise, the case would be dismissed without prejudice at the plaintiff's cost.
[1] Two other California entities, Central Self Storage Investors and CSS Hempstead, are also involved. For the sake of convenience and brevity, I have referred herein to the California defendants collectively as "Pegasus."