# STATE OF LOUISIANA
## COURT OF APPEAL
## FIRST CIRCUIT

### 2019 CA 1031

## PHILLIPS C. WITTER

### VERSUS

## SANIBEL YACHT & SLIP, LLC; PAGE GLOBAL MARINE, LLC; PAGE MARINE HOLDINGS, LLC; AND DERRICK TAYLOR

Judgment rendered **JUN 2 4 2020**

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. C669316, Sec. 24

The Honorable R. Michael Caldwell, Judge Presiding

* * * * *

David C. Spinner
Galen M. Hair
New Orleans, Louisiana

Attorney for Plaintiff/Appellant
Phillips C. Witter


Ashley C. Meredith
John Stone Campbell, III

Baton Rouge, Louisiana

Attorneys for Defendant/Appellees
Sanibel Yacht & Slip, LLC; Sanibel
Yacht & Slip, LLC; Page
Marine Holdings, LLC


* * * * *

BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.

Welch J. dissents and assigns reasons

**HOLDRIDGE, J.**

Plaintiff, Phillips C. Witter, appeals a trial court's judgment sustaining a declinatory exception raising the objection of lack of personal jurisdiction filed by defendants, Sanibel Yacht & Slip, LLC (Sanibel), Page Global Marine, LLC, and Page Marine Holdings, LLC (collectively referred to as "the defendants"). We amend the judgment, and as amended, affirm.

## BACKGROUND

On May 21, 2018, Mr. Witter filed this lawsuit in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana, against Sanibel, Page Global, and Page Marine, all Florida limited liability companies with registered offices located in Fort Myers, Florida, seeking damages and attorneys' fees. Mr. Witter asserted that the Louisiana court had specific personal jurisdiction over all of the nonresident defendants, on whom service was perfected pursuant to the Louisiana long arm statute, La. R.S. 13:3201.

The petition contains the following allegations: Mr. Witter, a long-time boating enthusiast and resident of East Baton Rouge Parish, found a 2004 32' Boston Whaler Outrage for sale on an internet boat trader website. The vessel was located in Fort Myers and was being sold through Sanibel, a company that acts as a listing and selling broker of watercraft. In April 2017, Mr. Witter travelled to Fort Myers to inspect and test drive the vessel. He met with representatives of the defendant companies at a boat yard where the vessel was parked on a trailer. A licensed marine surveyor, Donavan Pike, was present at the time, and he and Mr. Witter inspected the vessel while it was on land. The vessel was pulled to a launch ramp so that Mr. Witter could test drive it; along the way, Mr. Witter learned from employees of two of the defendants that the trailer on which the vessel was being

2

stored was not sound, and if he wished to purchase the vessel, a new trailer would have to be purchased prior to having the vessel transported to Louisiana.

Mr. Witter alleged that neither he nor Mr. Pike uncovered any defects or damage to the hull of the vessel, and based on the visual inspection and test drive, Mr. Witter agreed to purchase the vessel for the sum of $83,000.00. Mr. Witter signed a conditional acceptance of the vessel.

According to Mr. Witter, "Scott," an employee of either Page Global or Page Marine, told him he would order a new trailer to transport the vessel, it would take about six weeks to arrive and during that time, the defendants would store the boat for safe keeping. After several weeks without any communication from the defendants, Mr. Witter contacted the defendants to inquire about the status of the trailer delivery and learned from an unknown individual that it had not yet arrived. After this initial telephone call, Mr. Witter again attempted to contact the defendants over the next several weeks, but did not receive a response from them.

Mr. Witter further alleged that he was finally contacted by Scott in late July of 2017, who informed him the trailer had arrived and was being fitted for the vessel. Several weeks later, the vessel was delivered to Mr. Witter in Louisiana by Derrick Taylor, a Louisiana domiciliary. Upon delivery of the vessel to him in Louisiana, Mr. Witter noticed a number of defects in the hull of the vessel, which were not present when he and Mr. Pike inspected the vessel in Florida. Mr. Witter's representative contacted Sanibel regarding the damage and was told that the prior owners of the vessel had done work on the hull of the vessel before listing it for sale. Mr. Witter's representative contacted the prior owners of the vessel, who denied the existence of any defects prior to listing it for sale.

Mr. Witter alleged that during the weeks the defendants were waiting for the trailer to arrive, they used the vessel and caused the damages that were present

3

when the vessel was eventually delivered. He claimed that numerous attempts were made to open amicable discussions with the defendants, but they were ignored. Further, Mr. Witter alleged that he informed the defendants he was not accepting delivery of the vessel and those communications were ignored. Alternatively, Mr. Witter alleged that although unlikely, the vessel may have been damaged during the transportation from Florida to Louisiana.

Asserting claims of fraudulent misrepresentation, negligence, strict liability, vicarious liability, and violations of Louisiana's unfair trade practices and consumer protection law, Mr. Witter sought to recover the full purchase price of the vessel, damages for causing or allowing the vessel to be damaged while in their custody, treble damages, costs, and attorneys' fees from the defendants. Mr. Witter insisted that defendants made the following misrepresentations to him or to his representative via written or electronic communication while Mr. Witter or his representative was located in Louisiana: (1) the trailer needed to transport the vessel would take six weeks to arrive and when it did the defendants told Mr. Witter it had not arrived; (2) the previous owners of the vessel caused repairs to be done to the vessel; and (3) the vessel would be stored for safe keeping while the new trailer was being delivered to Florida. According to Mr. Witter, the defendants intentionally made these false misrepresentations to cover up the fact they damaged the hull of the vessel, to buy time to repair that damage, and to deceive him into believing there were no problems with the vessel while in their custody, with the knowledge that by the time Mr. Witter discovered the extent of the damage, the vessel would already have been delivered to him in Louisiana.

In the petition, Mr. Witter asserted that the trial court had specific personal jurisdiction over all of the defendants because the acts committed by each of the defendants constituted intentional torts, and the tortious conduct was committed in

4

the State of Louisiana or with the knowledge that the damages would be suffered in this state.

The defendants filed a declinatory exception raising the objections of lack of personal jurisdiction and improper venue[1]. Therein defendants asserted that Mr. Witter could not establish that a Louisiana court has personal jurisdiction over them because he could not demonstrate that any of the defendants had sufficient "minimum contacts" with the State of Louisiana to justify their being "haled into" court here. Moreover, they asserted, maintenance of the suit in Louisiana would "offend traditional notions of fair play and substantial justice.[2]"

A hearing was held on the defendants' declinatory exception, during which no evidence was introduced in support of or to controvert the exception. Following the conclusion of the parties' arguments, the court found that Mr. Witter did not meet his burden of establishing sufficient minimum contacts between the nonresident defendants and Louisiana necessary to support the exercise of personal jurisdiction over the defendants by a Louisiana court. The court pointed out that the only evidence offered by Mr. Witter of any type of contact between the defendants and Louisiana was a phone call initiated by Mr. Witter, during which the defendants allegedly were untruthful with him, and specifically found that the "fraud phone call" was insufficient to support the exercise of personal jurisdiction over the defendants by the State of Louisiana. The court also noted that there was

---

[1] The improper venue objection was based in part on a forum selection clause contained in the agreement signed by Mr. Witter; the trial court denied this objection. This ruling is not at issue in this appeal.

[2] In support of their jurisdictional objection, the defendants attached an affidavit of a Sanibel broker who made various attestations regarding the nature of the defendants' Florida businesses and who identified several documents attached to their memorandum. Mr. Witter objected to this affidavit at the hearing on the declinatory exceptions, urging that it would be improper for the court to consider the affidavit. The defendants did not attempt to introduce the affidavit at the hearing.

5

no evidence offered by Mr. Witter to contradict the allegations made by the defendants.[3]

On February 19, 2019, the trial court signed a judgment denying the defendants' exception of improper venue. The judgment sustained the defendants' objection of lack of personal jurisdiction, dismissing all of Mr. Witter's claims against the nonresident defendants. This appeal, taken by Mr. Witter, followed.

## PERSONAL JURISDICTION

Louisiana's long-arm statute, La. R.S. 13:3201B, provides for the exercise of personal jurisdiction over a nonresident defendant. It states, in pertinent part, that "a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States." Therefore, the limits of the long-arm statute are co-extensive with the limits of constitutional due process. **A&L Energy, Inc. v. Pegasus Group**, 2000-3255 (La. 6/29/01), 791 So.2d 1266, 1270. For the exercise of personal jurisdiction over a nonresident defendant to comport with constitutional due process, the defendant must have purposefully established "minimum contacts" with the forum state such that he could reasonably anticipate being haled into court there, and the exercise of personal jurisdiction must be such that it "does not offend traditional notions of fair play and substantial justice." **International Shoe Co. v. Washington**, 326 U.S. 310, 316, 666 S.Ct. 154, 158, 90 L.Ed. 95 (1945); **Peters v. Alpharetta Spa, L.L.C.**, 2004-0979 (La. App. 1st Cir. 5/6/05), 915 So.2d 908, 911. This fundamental constitutional due process test requires a court to evaluate the quality and nature of activities in the forum state and to determine whether

---

[3] After the trial court ruled on the exception, Mr. Witter's attorney asked the court to allow Mr. Witter to testify, and asserted that Mr. Witter would have testified that he did not call the defendants; rather, it was the defendants who called him.

6

such contacts justify the state's exercise of personal jurisdiction over the defendant. **A&L Energy, Inc.**, 791 So.2d at 1270-71.

A two-step test is employed in determining whether a court may exercise personal jurisdiction over a nonresident. **Ruckstuhl v. Owens Corning Fiberglass Corporation**, 98-1126 (La. 4/13/99), 731 So.2d 881, 885-86. First, the plaintiff must demonstrate that the defendant has established minimum contacts with the forum state, which is satisfied by a single act or actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the forum state's laws". **Ruckstuhl**, 731 So.2d at 885 (quoting **Burger King Corp. v. Rudzewicz**, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The nonresident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. **World-Wide Volkswagen Corp. v. Woodson**, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)

The purposeful availment requirement ensures that the nonresident defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or the unilateral activity of another party or third person. **A&L Energy Inc.**, 791 So.2d at 1271. Once a plaintiff meets his burden of proving minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unreasonable in light of the traditional notions of fair play and substantial justice. **Ruckstuhl**, 731 So.2d at 885-86.

A court's exercise of personal jurisdiction may be specific or general. A state has specific jurisdiction over a defendant when the suit arises out of or is related to the defendant's contacts and the defendant purposefully avails itself of the privilege of conducting activities in the forum state. **Northshore Regional Medical Center, L.L.C. v. Dill**, 2011-2271 (La. App. 1st Cir. 6/8/12), 94 So.3d

155, 162. Where the contact with the forum state is not related to the cause of action, a state may assert general jurisdiction over a defendant domiciled in the forum or whose activities in the forum are substantial or continuous and systematic. **Id.** It is clear in this case that Mr. Witter is seeking to invoke the trial court's specific, rather than general, personal jurisdiction over the defendants.

In Louisiana, an objection to a court's lack of jurisdiction over the person is raised through a declinatory exception. La. C.C.P. art. 925. Louisiana Code of Civil Procedure article 930 provides that at a trial on a declinatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition, citation, or return thereon. When a contradictory evidentiary hearing is held on the objection of personal jurisdiction, the plaintiff must prove facts showing that the assertion of jurisdiction over the defendants is proper by a preponderance of the evidence. **de Reyes v. Marine Management and Consulting, Ltd.**, 586 So.2d 103, 109 (La. 1991). Appellate courts use the *de novo* standard in determining the legal issue of whether a Louisiana court may assert personal jurisdiction over a nonresident. **Northshore Regional Medical Center, L.L.C.**, 94 So.3d at 161. In this case, a hearing on the declinatory exception was held; however, none of the parties introduced evidence therein to support or controvert the exception. When no evidence is presented at the hearing on a jurisdictional objection, the objection must be decided on the facts alleged in the petition. **Park West Children's Fund, Inc. v. Trinity Broadcasting Network, Inc.**, 2013-444 (La. App. 3d Cir. 10/16/13), 156 So.3d 682, 686; <u>See also</u> **Northshore Regional Medical Center, L.L.C.**, 94 So.3d at 160-161.[4]

---

[4] Mr. Witter contends that the trial court erred in requiring that he refute the statements set forth by the defendants in an affidavit attached to their memorandum regarding their lack of activities in Louisiana. Due to the fact that Mr. Witter failed to introduce any evidence at the hearing on

8

The only issue in this case is whether the minimum contacts prong of the due process test has been met. In determining whether minimum contacts exist, a court must undertake a factual examination of the relationship among the forum, the defendant, and the litigation. **A&L Energy, Inc.,** 791 So.2d at 1271-1272. Mr. Witter argues that he has established, through the allegations of his petition, that the defendants have sufficient minimum contacts with Louisiana. He insists that this lawsuit does not arise out of the sale of the vessel, but rather, arises out of the defendant's agreement to store the vessel for him, the defendants' damage to the vessel while in their custody, and the defendants' fraudulent misrepresentations regarding the condition of that vessel while engaged in telephone calls with him. Although Mr. Witter acknowledges that he placed the calls to the defendants, he asserts that the defendants "solicited" the calls as they were in control of the property he owned and must have expected to receive telephone calls regarding the status of the delivery of the vessel to him in Louisiana. According to Mr. Witter, during those telephone calls, the defendants made a conscious decision to provide him with false information by intentionally concealing the damage they caused to the vessel, which they knew would be delivered to Mr. Witter in Louisiana; therefore, the defendants should have reasonably anticipated being haled into a Louisiana court based on that conduct.

In response, the defendants argue that there are only two contacts upon which Mr. Witter is attempting to establish personal jurisdiction: a pair of unsolicited telephone calls placed by Mr. Witter to the nonresident defendants. They maintain that these telephone calls are insufficient to establish the existence of minimum contacts between themselves and Louisiana. We agree.

---

the objection, in our *de novo* review of the jurisdictional issue, we shall consider only the allegations of Mr. Witter's petition in order to determine whether Mr. Witter has met his burden of demonstrating that the court's assertion of personal jurisdiction is appropriate.

9

The only allegations of any contacts between the defendants, Louisiana, and this litigation are two telephone calls admittedly placed by Mr. Witter to defendants. The allegations of the petition demonstrate that Mr. Witter initiated all of the meaningful contacts in this case. Mr. Witter located the vessel he purchased on an internet boating site; Mr. Witter travelled to Florida to inspect the vessel, which was being sold through one of the defendants' companies; Mr. Witter purchased the vessel from its owner while he was in Florida; Mr. Witter left the vessel with the defendants in Florida for safekeeping until a trailer to transport the vessel could be delivered to Florida; Mr. Witter called the defendants to inquire about the status of the vessel's delivery to him in Louisiana; the vessel was allegedly damaged by the defendants in Florida; and the alleged misrepresentations occurred while the defendants were in Florida. Moreover, the vessel was delivered to Mr. Witter by a Louisiana domiciliary, not the defendants. Under these circumstances, we can only conclude that Mr. Witter has not demonstrated any minimum contacts by the defendants with the State of Louisiana. Furthermore, there was no evidence introduced that the defendants purposefully availed themselves of the privilege of conducting activities within this state, thus invoking the benefits and protections of our laws. Because Mr. Witter has not met his burden of showing that defendants have sufficient minimum contacts with Louisiana to subject them to the personal jurisdiction of a Louisiana court, the jurisdictional objection was properly sustained by the trial court.

We note that the judgment appealed did not specifically dismiss the defendants from this lawsuit without prejudice. Accordingly, we shall amend the trial court's judgment to reflect that Mr. Witter's claims against the defendants are dismissed "without prejudice." See **Northshore Regional Medical Center, L.L.C.,** 94 So.3d at 165.

## CONCLUSION

For the foregoing reasons, the trial court's judgment sustaining the defendants' declinatory exception raising the objection of lack of personal jurisdiction is amended to dismiss all of Phillips C. Witter's claims against all defendants without prejudice. As amended, the judgment is affirmed. All costs of this appeal are assessed to appellant, Phillips C. Witter.

**AMENDED; AFFIRMED AS AMENDED.**

PHILLIPS C. WITTER

VERSUS

SANIBEL YACHT & SLIP, LLC; AND DERRICK TAYLOR

2019 CA 1031

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

---

WELCH, J., dissenting.

*JCW*

I respectfully disagree with the majority opinion in this matter. The majority's opinion is contrary to this Court's prior holding and determinations in **Crummey v. Morgan**, 2007-0087 (La. App. 1st Cir. 8/8/07), 965 So.2d 497, that personal jurisdiction over a defendant is proper when a defendant uses an internet sales mechanism, such as eBay,--or in this case, the internet boat trader website—because such internet sales mechanism permits the defendant's product to be marketed for sale in Louisiana. Furthermore, in this case, the allegations of the plaintiffs petition establish that the defendants---by agreeing to store the vessel for Mr. Witter, damaging Mr. Witter's vessel while it was in their custody, and fraudulently misrepresenting the condition of that vessel while engaging in telephone calls with Mr. Witter in Louisiana---created a continuing obligation between themselves and Mr. Witter, a domiciliary of Louisiana; thus, the defendants manifestly availed themselves of the privilege of conducting business in Louisiana. See deReyes v. **Marine Management and Consulting, Ltd.**, 586 So.2d 103, 106 (La. 1991). Therefore, I would reverse the judgment of the trial court and overrule the defendant's exception of lack of personal jurisdiction.

Thus, I respectfully dissent.