519 N.W.2d 373 (1994)
In the Matter of the ESTATE OF Elsie M. KEENAN, Deceased.
Raymond KOSITZKY, Erna Kositzky Gavin, and Gertrude Margaret Kositzky Monfore, Appellants,
v.
Mary Jo MONFORE and Patrick L. Carmody, Appellees.
No. 93-558.
Supreme Court of Iowa.
July 27, 1994.
*375 Bernard L. Spaeth, Jr., Wendy Carlson, Maureen Roach Tobin of Whitfield & Eddy, P.L.C., Des Moines, for appellants.
John C. Conger and Frederick B. Anderson, West Des Moines, for appellees.
Michael W. O'Malley of Connolly, O'Malley, Lillis, Hansen & Olson, Des Moines, for heirs of Elsie M. Keenan.
Michael J. Cunningham of Adams, Howe & Zoss, P.C., Des Moines, for heirs of Stephen E. Keenan.
Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.
CARTER, Justice.
The heirs at law of Elsie M. Keenan appeal from a declaratory judgment concerning (1) the interpretation of Iowa Code section 558.68 (1991) with respect to vesting and reformation of future interests created under Elsie's will, and (2) the payment of inheritance taxes on nonprobate assets from her residual estate. The district court's decision was entered following challenges to the report of the referee in probate and is an appealable judgment under Iowa Code section 633.36 (1991).
The district court found that a bequest in trust of a fund for payment of college scholarships to blood descendants of decedent and her deceased husband violated the rule against perpetuities. The court then attempted to reform the gift pursuant to subsection 3 of section 558.68 so that all future interests would vest within the period of the rule. In addition, the court rejected the contention of those appellants who were recipients of nonprobate assets, i.e., joint bank accounts, certificates of deposit, and annuities, that the inheritance taxes on those interests should be paid from the residue of the estate. After reviewing the record and considering the arguments of the parties, we affirm the district court's ultimate disposition on the vesting and reformation issues albeit on a somewhat different legal theory. We reverse the judgment on the issue involving payment of inheritance taxes from the residuary estate. The facts will be presented in connection with our discussion of the legal issues presented.

I. The Vesting and Reformation Issues.

The vesting and reformation issues grow out of the residuary clause of Elsie's will, which provides:
I devise the rest and residue of my estate to a trust to be established at the First Interstate Bank of Urbandale. The terms of the trust have been settled with the First Interstate Bank of Urbandale, but essentially they are as follows:
1) A perpetual fund is to be established for the purposes of providing scholarships to any blood heirs of my husband or myself.
2) There will be no distribution of funds to an individual unless the individual has completed at least one semester at an accredited college or university and maintained a 3.0 academic average on a scale of 4.0.
Investigation by Elsie's executors revealed that no inter vivos trust of the type described in the will had been established during her lifetime. The executors sought a declaratory judgment concerning whether the language of the will was definite enough to be carried out as a testamentary trust.
The decedent's heirs at law intervened in the declaratory judgment proceeding and urged that the bequest in trust was in violation of the rule against perpetuities. The district court agreed with this contention, but purported to act under subsection 3 of section 558.68 to reform the bequest so that the rule would not be violated. This reformation consisted of ordering that the trust terminate twenty-one years after the death of the last heir of the testator or her husband who was living at the time of the testator's death. The court directed that any remaining corpus be distributed at that time to the testator's heirs at law. The court also fleshed out the details of the proposed scholarship trust to eliminate the executors' concerns about lack of specificity.
Subsection 3 of section 558.68 provides as follows:

*376 A nonvested interest that would violate the rule against perpetuities whether its period is measured by actual or by possible events shall be judicially reformed to most closely approximate the intention of the creator of the interest in order that the nonvested interest will vest, even though it may not become possessory, within the period of the rule.
The record indicates that the class of persons who could become eligible for scholarships, if they could meet the educational and grade criteria that the testator imposed, consists of (1) five nephews, four nieces, twelve great-nephews, three great-nieces, eight great-great-nephews, and eleven great-great-nieces of the testator; (2) five nephews, seven nieces, thirteen great-nephews, eight great-nieces, two great-great-nephews, and three great-great-nieces of the testator's deceased husband; and (3) additional heirs of the testator and her deceased husband to be born in the future.
The district court determined that, because there was no provision assuring that all of the trust res would vest in ascertainable beneficiaries within the period demanded by the rule against perpetuities, the gift must fail if not reformed in accordance with the court's orders. The court recognized that the result would be otherwise if the trust were for charitable purposes, but concluded that it was not. That conclusion has not been challenged by appellants.
In challenging the order reforming the bequest, the heirs contend that subsection 3 of section 558.68 only authorizes reformation of interests that are destined to vest too late for purposes of the rule against perpetuities. They urge that this provision has no application where, as here, it is not assured that the full beneficial interest in the trust res will ever vest in an ascertainable beneficiary.
The heirs' contention turns on whether the equitable or beneficial interest in a trust res that parallels the trustee's legal interest is a "nonvested interest" under the rule against perpetuities if not gifted to some person assured to be ascertainable during the period of the rule. Their contention appears to be inconsistent with their assertion throughout this litigation that the bequest should be invalidated under subsection 1 of section 558.68. A violation of that clause appears to require the existence of "a nonvested interest in property."
The equitable or beneficial interest in the trust res is an identifiable interest in property separate and apart from the legal interest of the trustee. 61 Am.Jur.2d Perpetuities § 67, at 77 (1981). It is thus recognized that:
According to the prevailing view, the rule against perpetuities applies to trusts for private purposes as distinguished from public or charitable trusts, and requires that the legal and equitable estates vest in interest, although not necessarily in possession, not later than the end of the period.

Id. (footnotes omitted). The Restatement (Second) of Trusts provides:
The creation of a trust is a method of making a disposition of property. Such a disposition requires that there be a person to receive the beneficial interest in the property, a person who is to have a right to enforce the trust. It is not necessary, however, that the beneficiary should be known at the time of the creation of the trust. The beneficiary must be either (1) specifically named; or (2) capable of ascertainment from facts existing at the time of the creation of the trust; or (3) capable of ascertainment from facts which although not existing at the time must necessarily be in existence at some time within the period of the rule against perpetuities.
Restatement (Second) of Trusts § 112, at 243-44 (1959). The Restatement of Property provides:
[T]he rule against perpetuities regulates not only future interests limited subsequent to a trust, but also the future interest limited in favor of the beneficiaries of a trust.... [W]hen A limits property to a trustee wholly for the benefit of persons not ascertainable within the period [of the rule] the beneficial interests all fail and the trustee has the legal title, which he holds on resulting trust for the conveyor or his successors in interest.
*377 Restatement of Property § 377, at 2212-13 (1944).
While the legal interest in the present trust is vested in the trustee throughout the period of the rule and some of the equitable interest may vest in beneficiaries who are identified during the period of the rule against perpetuities not all of the beneficial interest will necessarily vest during the period of the rule. The portion of the equitable interest that remains unvested at any time during the period of the rule is, we believe, a nonvested interest for purposes of both subsection 1 and subsection 3 of section 558.68.[1]
We are mindful that reforming a muniment of title in a manner that not only advances the time of vesting of property interests but also determines that persons not named by the grantor shall succeed to those interests is indeed an extreme judicial action. For this reason, we conclude that the persons or class in which the undisposed of beneficial interest may be vested by judicial reformation, if not otherwise suggested by the grantor, must be the persons or class who would take the interest if the gift were voided by the rule against perpetuities.
Another impediment to the district court's attempted reformation under subsection 3 is the potential elimination of the perceived vesting problems by application of the "wait and see" doctrine espoused in subsection 2(a) of section 558.68. In keeping with the "wait and see" clause of the statute, application of the rule against perpetuities is not to be determined until it appears with certainty (based on actual events) that an interest in property will not vest within the period of the rule. Under the district court's interpretation of the will, the trust res may be invaded, depleted, and eventually exhausted in payment of the designated scholarships. It is thus possible under that interpretation for the trust res to be entirely exhausted by scholarship grants to qualifying heirs within the period of the rule.
We believe that the "wait and see" provision of the statute is the remedy of choice for vesting problems under the rule and that the reformation provisions are not triggered unless "wait and see" fails to validate the challenged interest. Consistent with its interpretation permitting invasion of trust corpus to pay scholarships, the court should not have acted at the present time to invalidate the bequest and then modify it to save its failure under the rule. It should instead have presumed that the entire trust res would be expended within the period of the rule until that time passed with unexpended trust corpus yet remaining.
Our belief that the "wait and see" provisions of the statute should take precedence over the reformation provisions poses no problem to reformation if the bequest of a "perpetual fund," as that language is employed in the will, is interpreted as only allowing scholarships to be paid from the income of the trust. We believe that interpretation is the only one consistent with an attempt to create a perpetual trust fund. The consequence of this conclusion is that the "wait and see" provisions of section 558.68 could not save the vesting problem that exists concerning the trust res. Judicial reformation under subsection 3 of the statute was thus an available course of action for the court to take.
Notwithstanding our conclusions concerning the intention of the testator, we believe that the court, in reforming the trust, could authorize accelerated vesting through payment of scholarships from trust corpus as well as from trust income. That disposition will assure that the entire corpus will be expended for the purpose that the testator desired, although over a substantially shorter period of time. Limitations imposed by the court on the amount of scholarship payments to be awarded any beneficiary are supportable *378 on the basis that such structure assures achievement of the objects of the trust. See Pittman v. Thomas, 58 N.C.App. 336, 293 S.E.2d 695, 698 (1982). We thus approve the district court's ultimate disposition in reforming the trust, although we do so on a different theory than that court employed.

II. Payment of Inheritance Taxes on Nonprobate Assets.

The executor's request for declaratory judgment also asked the court to resolve an issue concerning the obligation, if any, to pay inheritance taxes on nonprobate assets from the residuary estate of the decedent. In this regard, the will provided as follows:
All inheritance, estate and succession taxes imposed upon my estate, whether by state, federal or foreign governments shall be paid from my residuary estate without apportionment or contribution from any person.
My personal representative may make any tax selection available to him; may execute or file or join with others in executing or filing any tax return and may take any action with respect to taxation which he deems advisable.
At the time of her death, the decedent owned bank accounts and certificates of deposit in joint tenancy with some of the appellants and owned annuities in which some of the appellants are the designated beneficiaries upon her death. These appellants contend that the foregoing clause in decedent's will obligates her personal representative to pay any inheritance taxes that befall the recipients of these nonprobate assets.
The district court, seizing on the language "taxes imposed upon my estate," determined that the meaning of this clause embraced only those taxes that were imposed on the decedent's estate as a taxable entity as contrasted with taxes that might be imposed upon beneficiaries of the estate. Although interpretation of the words "taxes imposed upon my estate" might in some situations take meaning from applicable taxing statutes, the words used in a will are ordinarily to be interpreted in the context of that instrument. See In re Estate of Miguet, 185 N.W.2d 508, 515 (Iowa 1971); In re Young, 243 Iowa 211, 220-21, 49 N.W.2d 769, 774 (1951). It appears that the word "estate" is used throughout the will in a generic sense to describe the entirety of the assets owned by the decedent at the time of her death.
Two additional circumstances militate strongly in favor of adopting an interpretation of the tax payment clause contrary to that reached by the district court. These circumstances are (1) the specific direction that "inheritance" taxes are to be paid from the estate residue; and (2) the reality that, in view of the provisions of Iowa Code section 633.449 (1991), this clause would be without significance unless it is applied to taxes imposed on beneficiaries.
We reverse the judgment of the district court on the issue concerning payment of inheritance taxes on nonprobate assets from the residue of the estate. We affirm the disposition of the court on the other issues. Costs on appeal are taxed sixty percent to appellants and forty percent to appellees.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] We reject the suggestion that the right to the remaining corpus not distributed to ascertainable beneficiaries under the trust instrument is at all times vested in the grantor's successors in interest. The heirs seek to support that assertion by reliance on In re Barnes Estate, 256 Iowa 1043, 1056-57, 128 N.W.2d 188, 195 (1964). The distinguishing feature between the present case and the Barnes case is that in the latter it was possible to determine under the trust instrument a time at which its purposes ceased. That is not true with respect to the "perpetual trust" created under Elsie's will.