MCDONALD, J.
In this appeal, a defendant challenges a judgment dismissing its third-party demand against a Texas resident, in her personal capacity and as trustee of a Texas trust, based on a lack of personal jurisdiction. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
This suit is one of several arising from the August 2012 appearance of a sinkhole near Bayou Corne in Assumption Parish, Louisiana. EnLink f/k/a Crosstex[1] , the plaintiffs in the underlying litigation, own and operate a natural gas pipeline that traverses the edge of a salt dome. Texas Brine[2] operates brine production wells, including the Oxy Geismar # 3 well, on property above the salt dome. For many years before the appearance of the sinkhole, Colorado Crude Company and several of its assignees had an oil/gas/mineral lease, the Colorado Crude Lease (CCL), on land next to where the Oxy Geismar # 3 well was located. In 1986, one of the CCL assignees drilled and began to operate the Hooker # 1 well, an oil and gas well, on that adjacent land. The Hooker # 1 well reservoir and the Oxy Geismar # 3 salt cavern allegedly shared a common underground wall. Linder the CCL, all assignees were bound to "diligently endeavor not to damage any salt formations which may exist upon the leased premises and shall pay for any actual damages which may occur from operations upon said leased premises."
In June 1986, HECI Exploration Company (HECI), the then current CCL assignee, became the operator of the Hooker #1 well. On December 31, 1990, HECI assigned its CCL interest to Jane H. Browning and Michael G. Starnes, co-trustees of the Browning Children's Trust (BCT), a Texas trust governed by Texas law.[3] Three days later, on January 2, 1991, *810 the BCT co-trustees assigned the CCL interest to Browning Oil Company. Under these assignments, the BCT co-trustees and Browning Oil Company, respectively, agreed to "assume and be subject to the proportionate share of all obligations" under the CCL. On February 13, 2001, over 10 years later, Mr. Starnes resigned as BCT co-trustee, and on that date, Averille Browning Dawson became BCT trustee.
After the sinkhole appeared in 2012, Crosstex filed suit against Texas Brine, among others, alleging the sinkhole was caused, in whole or part, by the failure of the Oxy Geismar # 3 salt cavern and that the sinkhole damaged Crosstex's pipeline. In response, Texas Brine filed incidental demands against several parties, including Mr. Starnes, BCT co-trustee, as a past CCL assignee.[4] Texas Brine alleged, among other things, that the CCL assignees caused the sinkhole, in whole or part, and were liable to Texas Brine due to negligence, strict liability, breach of contract, breach of duties under the Louisiana Mineral Code, and for contribution and indemnification. Later, pursuant to Texas Brine's motion, the trial court signed an order substituting Ms. Dawson for Mr. Starnes as third-party defendant, in her capacity as "current trustee of the Lessee Trust [the BCT]."
Ms. Dawson then filed a declinatory exception pleading the objection of lack of personal jurisdiction, and Texas Brine filed an opposition. After a hearing, the trial court signed a judgment on July 6, 2017, granting the exception and dismissing Texas Brine's claims without prejudice against Ms. Dawson, individually and as BCT trustee.
Texas Brine first sought review of the July 6, 2017 judgment via a supervisory writ application to this Court. Under docket number 2017 CW 1079, we refused to consider the writ because the judgment dismissing Ms. Dawson is an appealable judgment under LSA-C.C.P. art. 1915A. Texas Brine now appeals from the adverse judgment, contending the trial court erred in concluding it did not have personal jurisdiction over Ms. Dawson. On appeal, Texas Brine does not argue that Ms. Dawson herself had sufficient minimum contacts with Louisiana to support personal jurisdiction over her. Rather, in two assignments of error, Texas Brine argues the trial court should have found that Mr. Starnes, Ms. Dawson's predecessor as BCT trustee, had sufficient minimum contacts with Louisiana to support the exercise of personal jurisdiction over him and that his contacts should be imputed to Ms. Dawson.
PERSONAL JURISDICTION
The Louisiana Long Arm Statute provides for the exercise of personal jurisdiction over a nonresident defendant, who acts directly or by an agent, as to a cause of action arising from having an interest in, using, or possessing a real right on immovable property in this state. LSA-R.S. 13:3201A(5). Additionally, the Long Arm Statute provides for the exercise of personal jurisdiction over a nonresident on any basis consistent with the United States *811 and Louisiana Constitutions. LSA-R.S. 13:3201B; Southeast Wireless Network, Inc. v. U.S. Telemetry Corp. , 06-1736 (La. 4/11/07), 954 So.2d 120, 124. The addition of Subsection B to the Long Arm Statute ensures that the long-arm process extends to the limits allowed by Due Process. Id. Thus, rather than focusing on the examples set forth in Section A, the sole inquiry into jurisdiction over a nonresident is an analysis of the constitutional Due Process requirements. See Ruckstuhl v. Owens Corning Fiberglas Corp. , 98-1126 (La. 4/13/99), 731 So.2d 881, 885, cert. denied , 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999) ; A & L Energy, Inc. v. Pegasus Group , 00-3255 (La. 6/29/01), 791 So.2d 1266, 1270, cert. denied , 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426 (2001) ; Taylor v. Arellano , 04-2281 (La. App. 1 Cir. 12/22/05), 928 So.2d 55, 58.
Due Process allows personal jurisdiction over a nonresident defendant when he has certain "minimum contacts" with the forum state such that maintenance of the suit does not offend traditional notions of "fair play and substantial justice." International Shoe Co. v. Washington , 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) ; Southeast Wireless Network, Inc. , 954 So.2d at 124-25. The defendant's contact with the forum state must be such that he should reasonably anticipate being haled into court in the forum state. A & L Energy, Inc. , 791 So.2d at 1271. This Due Process test applies in both "specific" and "general" jurisdiction cases, de Reyes v. Marine Mgmt. and Cons., Ltd. , 586 So.2d 103, 109 (La. 1991). Specific jurisdiction exists when the nonresident defendant has purposefully directed his activities toward the forum state and the litigation results from alleged injuries that relate to those activities. A & L Energy, Inc., 791 So.2d at 1271. General jurisdiction, on the other hand, is appropriate when the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are so "continuous and systematic" as to render the nonresident defendant essentially at home in the forum state. Goodyear Dunlop Tires Operations, S.A. v. Brown , 564 U.S. 915, 919, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) ; Ohle v. Uhalt , 16-0569 (La. App. 4 Cir. 2/1/17), 213 So.3d 1, 7.
The second inquiry of the Due Process test centers on the fairness of exercising jurisdiction over the nonresident defendant. Even when minimum contacts exist, the exercise of jurisdiction must comport with "fair play and substantial justice" to meet Due Process requirements. A & L Energy, Inc. , 791 So.2d at 1271. In determining this fairness issue, the relevant considerations are: (1) the defendant's burden in litigating in the forum state; (2) the forum state's interest in the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the forum state's shared interest in furthering fundamental social policies. Id. at 1274.
The party asserting that personal jurisdiction is proper has the initial burden of proving minimum contacts. See Bridges v. Mosaic Global Holdings, Inc. , 08-0113 (La. App. 1 Cir. 10/24/08), 23 So.3d 305, 315, writ denied, 08-2783 (La. 2/20/09), 1 So.3d 496. If he satisfies this burden, a presumption of reasonableness of jurisdiction arises and the burden shifts to the opposing party to prove that the exercise of jurisdiction would not meet the Due Process fairness inquiry. Id. In granting the exception of lack of personal jurisdiction in this case, the trial court noted, "although there may have been some contact, it didn't reach above minimum contact, so I'm going to grant [the] exception." (R3697) An appellate court *812 conducts a de novo review of a trial court's legal ruling on an exception of lack of personal jurisdiction and a manifest error review of any factual findings underlying the ruling. Southeast Wireless Network, Inc. , 954 So.2d at 125 ; Bridges , 23 So.3d at 314. Based on Texas Brine's allegations and arguments, our de novo analysis focuses on whether specific jurisdiction exists over Mr. Starnes.
LOUISIANA TRUST LAW
Our review of the personal jurisdiction issue begins with a review of basic principles of Louisiana trust law.[5] A trust is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another. LSA-R.S. 9:1731. A trustee is the person to whom title to the trust property is transferred. LSA-R.S. 9:1781. Under Louisiana law, title to the trust property vests in the trustee alone, and a trust beneficiary has no title to or ownership interest in trust property, but only a civilian "personal right" vis-a-vis the trustee, to claim whatever interest in the trust relationship the transferor of the property (the settlor) has chosen to bestow. Bridges v. Autozone Properties, Inc. , 04-0814 (La. 3/24/05), 900 So.2d 784, 796-97 ; State Bd. of Ethics v. Ourso , 06-1467 (La. App. 1 Cir. 6/8/07), 964 So.2d 1059, 1065, writ denied , 07-1387 (La. 10/5/07), 964 So.2d 941. If a trustee makes a contract, or if a predecessor trustee has made such a contract, and if a cause of action arises thereon, the person with the cause of action may sue the trustee in his representative capacity, and any resulting judgment shall be satisfied from the trust property, unless personal liability can be otherwise established. LSA-R.S. 9:2125A and C. Further, if a trustee, or his predecessor, is personally liable for a tort committed while administering the trust, the trustee may be sued in his representative capacity and collection had from the trust property. LSA-R.S. 9:2126.
Based on these principles, we note that Mr. Starnes, as BCT co-trustee during the time Texas Brine alleges the CCL assignees were liable, had title to the BCT property, including the CCL interest, and he was the proper defendant to be named in Texas Brine's third-party demand based on contract and tort causes of action. Mr. Starnes' identity as a proper third-party defendant, however, does not answer the question of whether he is subject to a Louisiana court's jurisdiction. Thus, we now decide whether the trial court correctly found that Mr. Starnes did not have sufficient contacts with Louisiana to justify the exercise of specific jurisdiction over him.
DISCUSSION
In its incidental demands adding the CCL assignees as third-party defendants, Texas Brine generally alleged that the CCL assignees caused the sinkhole, in whole or part, and were liable to Texas Brine due to the improper drilling and operation of the Hooker # 1 well. From 1986, when the Hooker # 1 well was drilled, through 2012, when the sinkhole emerged, there were several CCL assignees *813 who had an interest in the well. Texas Brine cannot aggregate factual allegations concerning multiple CCL assignees to demonstrate personal jurisdiction over Mr. Starnes alone. See Ohle , 213 So.3d at 9. Notably, although not mentioned by the parties, when the relevant CCL assignments from HECI to the BCT co-trustees and then to Browning Oil Company were made, Mr. Starnes was HECI president, a BCT co-trustee, and Browning Oil Company's president, respectively.[6] Texas Brine only argues that Mr. Starnes' contacts as BCT co-trustee subject him to personal jurisdiction in Louisiana and points to no evidence of his contacts in any other capacity. So, in our analysis, we only consider facts pertinent to Mr. Starnes' contacts as BCT co-trustee here.
According to Mr. Starnes' affidavit, submitted in support of the exception of lack of personal jurisdiction, he has been a Texas resident since 1960, and as of 2016, he lived in Dallas, Texas. In 1975, Texas residents William H. and Jane H. Browning created the BCT, a Texas trust, for the benefit of their children, who were all also Texas residents. Mr. and Mrs. Browning named Mrs. Browning and Mr. Starnes as BCT co-trustees. About 15 years later, on December 31, 1990, HECI assigned its CCL interest to the BCT co-trustees, and three days later, on January 2, 1991, the BCT co-trustees assigned that same interest to Browning Oil Company. Under these assignments, the BCT co-trustees and Browning Oil Company, respectively, agreed to "assume and be subject to the proportionate share of all obligations" under the CCL.
During his three days as CCL assignee, neither Mr. Starnes as BCT co-trustee nor the BCT drilled or operated the Hooker #1 well. Although Mr. Starnes has taken two or three business trips to Louisiana, none of the trips involved a visit to the Hooker # 1 well site. He conducts no business in Louisiana and has no agents in Louisiana, other than attorneys who represent him in sinkhole-related litigation. He has visited New Orleans as a tourist about three times and visits his sister in Bossier City about once a year during a day trip for lunch. Mr. Starnes resigned as BCT co-trustee on February 13, 2001.
To support its argument that Mr. Starnes is subject to personal jurisdiction, Texas Brine relies on Benson v. Rosenthal , 116 F.Supp.3d 702 (E.D. La. 2015), to argue that a trust's interest in Louisiana immovable property is a sufficient connection for a Louisiana court to assert personal jurisdiction over the nonresident trustee. In Benson , a Texas trustee managed several Texas trusts for Thomas Benson, well-known owner of the New Orleans Saints and New Orleans Pelicans franchises, who created the Texas trusts for his daughter and grandchildren's benefit. Id. at 704. From their creation in 2009, 2012, and 2014, the trusts held ownership interests in various entities that, in turn, owned substantial Louisiana property, including the New Orleans Saints and Pelicans franchises, the Mercedes-Benz Superdome lease, the New Orleans Smoothie King Center lease, the New Orleans Fox television affiliate, the WVUE television station, multiple New Orleans area automobile dealerships, and the Benson Tower and Champions Square development. Id. at 704 and 708-09. In 2015, Mr. Benson requested that the Texas trustee exchange these trust assets for promissory notes of equivalent value. Id. at 704. When the trustee refused to make the exchange, Mr. Benson filed an action for declaratory judgment in a Louisiana federal district court seeking *814 to give effect to his requested exchange. Id. The trustee responded with a motion to dismiss for lack of personal jurisdiction. Id. at 705.
In concluding that the trustee had sufficient minimum contacts with Louisiana to warrant its exercise of personal jurisdiction over him, the Benson court first noted the trustee's arguments regarding his numerous Texas contacts: Mr. Benson and the trustee were both Texas residents when the Texas trusts were created; the trusts were governed by Texas law; the trusts owned shares in several Texas companies; and the trustee's refusal to make Mr. Benson's requested asset exchange occurred in Texas. Id. at 707. However, the Benson court went on to note that the trustee accepted management of the trusts knowing that the trusts had ownership interests in substantial Louisiana property; he attended monthly meetings in Louisiana with the trust beneficiaries; participated in conference calls; and executed numerous documents on behalf of the trusts in connection with various transactions involving the Louisiana property. Id. The Benson court concluded that the trustee should have reasonably expected that his position as trustee would necessarily entail continued contact with Louisiana through his administration of the trust assets and that his failure to perform his duties as trustee would affect both property and people in Louisiana. Id. at 709-10.
In this case, similar to Benson , Mr. and Mrs. Browning and Mr. Starnes were all Texas residents when the BCT, a Texas trust, was created. Here, the beneficiaries of the BCT were also Texas residents. Unlike Benson , however, there is no evidence that the BCT owned substantial Louisiana property in 1975, when Mr. and Mrs. Browning created the BCT and named Mr. Starnes as co-trustee, or at any other time when he was BCT co-trustee. To the contrary, the evidence shows that Mr. Starnes' title to the CCL interest for three days in 1990-91 is the only Louisiana property with which he was connected as BCT co-trustee. Unlike the Benson trustee, who made monthly trips to Louisiana to deal with trust-related business and handled numerous transactions involving the trusts' Louisiana property, Mr. Starnes has taken only two or three business trips to Louisiana, and none of those trips involved a visit to the Hooker # 1 well site. And, although Mr. Starnes, as a CCL assignee assumed a proportionate share of all obligations under CCL, neither he as BCT co-trustee nor the BCT drilled or operated the Hooker #1 well during his three days as the CCL assignee. Additionally, unlike Mr. Benson's claims against the trustee in that case, Texas Brine's alleged cause of action against Mr. Starnes does not arise out of his acts as BCT co-trustee. Further, according to his affidavit, Mr. Starnes conducts no other business in Louisiana and has no agents in Louisiana, other than attorneys representing him in sinkhole-related litigation.
We acknowledge that the "minimum contacts" inquiry can be satisfied by a single contact when that contact is purposefully directed to the forum state, when the litigation arises from that contact, such that the defendant should reasonably anticipate being haled into that forum. A & L Energy, Inc. , 791 So.2d at 1271. In applying established rules of Due Process law to the facts in this case, however, we do not find that Mr. Starnes purposefully directed his activities toward Louisiana by his passive receipt of the CCL assignment on December 31, 1990, in his capacity as BCT co-trustee, and his subsequent assignment of that interest to Browning Oil Company three days later, all of which took place in Texas, and all of which involved Texas residents and a Texas trust. Nor do we *815 find Texas Brine's claims against Mr. Starnes result from his title to BCT property, which included the CCL interest. Accord Bentley v. LCM Corp. , 14-139 (La. App. 3 Cir. 6/4/14), 140 So.3d 874, 878. In short, Mr. Starnes' three-day stint as a BCT co-trustee/CCL assignee should not have caused him to reasonably anticipate being haled into a Louisiana court. On de novo review, we conclude, as did the trial court, that Mr. Starnes' minimal contact with Louisiana as BCT co-trustee did not meet the Due Process "minimum contacts" requirement for exercising specific jurisdiction over him.
Because we find Texas Brine failed to prove Mr. Starnes had sufficient contacts with Louisiana, we need not address whether his contacts were imputable to Ms. Dawson as current BCT trustee, and the burden never shifted to Ms. Dawson to prove that the exercise of personal jurisdiction failed the fairness inquiry of the Due Process test. See Broussard v. Diamond Aircraft Industries, Inc. , 10-1611 (La. App. 1 Cir. 5/3/11), 65 So.3d 187, 191.
CONCLUSION
For the above reasons, we affirm the trial court's July 6, 2017 judgment, granting Averille Browning Dawson's declinatory exception pleading the objection of lack of personal jurisdiction, and dismissing Texas Brine's claims without prejudice against Averille Browning Dawson, individually and as trustee of the Browning Children's Trust. We assess costs of this appeal to Texas Brine.
AFFIRMED.

The original petition was filed by multiple Crosstex entities whose names later changed to multiple Crosstex entities. Here, we refer to the plaintiffs in the underlying litigation as Crosstex. See Crosstex Energy Svcs., LP v. Texas Brine Co., LLC , 17-0863 (La. App. 1 Cir. 12/21/17), 240 So.3d 1024, 1026, n.1, 2017 WL 6559768 *1, n.1.

In the original petition, Crosstex named Texas Brine Company, LLC, as the defendant who operated the wells. In later pleadings, Crosstex additionally named others allegedly related to Texas Brine Company, LLC, as defendants. Here, we refer to the defendants collectively as Texas Brine. See Crosstex Energy Svcs., LP , 240 So.3d at 1026, n.2, 2017 WL 6559768 at *1, n.2.

In 1975, William H. and Jane H. Browning, Texas residents, created five trusts for the benefit of their five children, and named Mrs. Browning and Mr. Starnes as co-trustees of the trusts. In 2001, when Averille Browning Dawson became trustee, four of the five trusts had terminated, because the Browning children had either died or reached the age at which the trusts terminated. Ms. Dawson became trustee only of the sole remaining trust, the Robert H. Browning Trust. Here, we refer to the trusts in the singular form as the Browning Children's Trust.

Texas Brine also named Mrs. Browning in the incidental demand, in her individual capacity, and as BCT co-trustee, and/or the Estate of Jane H. Browning. The status of that claim is not at issue here.

The parties do not discuss the nature of a trust under Texas law. Because no party has shown that Texas law differs from that of Louisiana as to the ownership of trust property, we will presume that Texas law is the same as Louisiana law. See LSA-R.S. 9:2262.4 and In re Succession of LeBeau, 10-2317 (La. App. 1 Cir. 1/12/12), 2012 WL 113076 at *7 (unpublished) (Gaidry, J., concurring in part and dissenting in part). We also note that LSA-R.S. 9:1784 provides that a trustee who accepts a trust established under Louisiana law submits to the jurisdiction of Louisiana courts. This provision does not apply to Mr. Starnes as the BCT co-trustee, as the BCT was established in Texas.

Signatures appearing on the HECI-BCT co-trustee assignment and on the BCT co-trustee-Browning Oil Company assignment show Mr. Starnes' capacity with regard to each entity.