STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CW 0079

2019 CA 0367

DANIEL E. BANNISTER

VERSUS

SFB COMPANIES, INC. OF DELAWARE, ET AL.

DATE OF JUDGMENT:    NOV 1 5 2019

ON APPLICATION FOR SUPERVISORY REVIEW
FROM THE NINETEENTH JUDICIAL DISTRICT COURT
NUMBER 660562, SECTION 24, PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE ROBERT D. DOWNING, JUDGE AD HOC

* * * * * *

| | |
|---|---|
| Matthew C. Clark<br>Frank J. Swarr<br>Mickey P. Landry<br>Philip C. Hoffman<br>New Orleans, Louisiana | Counsel for Respondents-Appellees<br>Patricia Ann Bannister, Shannon Rose<br>Jordan, Daniel E. Bannister, Jr.,<br>Dolphus Jacob Bannister, Anna Kay<br>Springer, and Grayson Humble<br>Bannister |
| Bruce A. Cranner<br>Patrice W. Oppenheim<br>Molly L. Manieri<br>Mandeville, Louisiana | Counsel for Relator-Appellant<br>SYSTRA Engineering, Inc. |

* * * * * *

BEFORE:  McDONALD, THERIOT, AND CHUTZ, JJ.

Disposition: **APPEAL DISMISSED. MOTION TO DISMISS APPEAL DENIED AS MOOT. WRIT GRANTED. JUDGMENT REVERSED AND RENDERED.**

McDonald, J. concurs and will assign reasons,

**CHUTZ, J.**

Relator-defendant, SYSTRA Engineering, Inc. (SYSTRA), seeks review of the trial court's judgment, overruling its declinatory exception raising the objection of lack of jurisdiction over its person and requiring it to appear in this litigation instituted by decedent, Daniel E. Bannister. We dismiss the appeal, grant the writ, reverse the trial court's judgment, and render judgment.

## BACKGROUND

Mr. Bannister filed a petition for damages against numerous defendants, alleging tortious exposure to asbestos and subsequent contraction of mesothelioma. After his death, his heirs, respondents-plaintiffs, Patricia Ann Bannister, Shannon Rose Jordan, Daniel E. Bannister, Jr., Dolphus Jacob Bannister, Anna Kay Springer, and Grayson Humble Bannister, were substituted as proper-party plaintiffs.

SYSTRA was named as a defendant in amending petitions. Without answering the lawsuit, SYSTRA filed a declinatory exception raising the objection of lack of jurisdiction over the person, challenging the propriety of the Louisiana court's jurisdiction over it.

On September 17, 2018, a hearing was held on the declinatory exception. The matter was submitted, but the trial court left the record open for additional briefing. After another hearing, on December 20, 2018, the trial court denied SYSTRA's exception in open court.

The trial court signed a judgment on January 9, 2019 to reflect its ruling in open court. SYSTRA both appealed and filed a notice of intent to apply for supervisory writs. Thereafter, on February 12, 2019, the trial court signed an amended judgment certifying its prior judgment, in pertinent part, as follows:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED**
> that this Court finds that this Judgment should be designated as a final judgment pursuant to La. C.C.P. art. 1915 because there is no just reason for delay for the appellate court to determine whether this Court can exercise personal jurisdiction over [SYSTRA] and because

2

irreparable damage will be done if the decision about personal jurisdiction is delayed.

After both the writ application and the appeal had been lodged, the Bannisters filed a motion to dismiss the appeal, asserting that SYSTRA's only remedy was review of the underlying ruling pursuant to its writ application since the interlocutory judgment rendered by the trial court, overruling the exception of lack of personal jurisdiction, was not appealable. In similar manner, this court issued an order noting that the judgment overruling the exception did not appear to be a final, appealable ruling and directed the parties to show cause why the appeal should not be dismissed. SYSTRA's writ application along with the Bannisters' motion to dismiss and this court's show cause order were referred to this panel for decision. See *Bannister v. SFB Companies*, 2019-0079 (La. App. 1st Cir. 3/21/19 and 5/28/19) (unpublished orders).

## APPELLATE REVIEW

Under Louisiana law, a final judgment is one which determines the merits of a controversy, in whole or in part. La. C.C.P. art. 1841. Clearly, the judgment denying the exception in this case does not determine the merits in whole or in part and is not a final judgment. Moreover, it is not a judgment deemed final by operation of law under La. C.C.P. art. 1915A.[1]

---

[1] La. C.C.P. art. 1915A provides:

A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 to 969, but not including a summary judgment granted pursuant to Article 966(E).
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
(6) Imposes sanctions or disciplinary action pursuant to Articles 191, 863, or 864 or Code of Evidence Article 510(G).

3

La. C.C.P. art. 1915B(1) allows for certification of partial judgments as follows:

> When a court renders a partial judgment or a partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

Although Article 1915 dispenses with finality in the sense of completion of the litigation, the judgment rendered must be sufficiently final in that it disposes of the claim or dispute in regard to which the judgment is entered. *Van ex rel. White v. Davis*, 2000-0206 (La. App. 1st Cir. 2/16/01), 808 So.2d 478, 483-85.

A judgment that denies an exception does not fall into any category recognized under Article 1915B(1) that can qualify for certification. As such, this court has acknowledged that La. C.C.P. art. 1915 does not authorize a trial court to designate a judgment denying an exception as final. See *Young v. City of Plaquemine*, 2004-2305 (La. App. 1st Cir. 11/4/05), 927 So.2d 408, 411. Moreover, this court is not bound by the trial court's designation and if the judgment is improperly designated, the defect is jurisdictional and this court cannot consider the merits under its appellate jurisdiction. See, e.g., *Van ex rel. White*, 808 So.2d at 485.

Here, SYSTRA timely filed an application for supervisory review of the January 9, 2019 judgment with this court. And on January 9, 2019, the trial court granted SYSTRA's motion for stay pending appellate review. Therefore, because SYSTRA has a viable remedy for immediate appellate review and the delays affecting SYSTRA have been stayed, we pretermit a discussion on the effect of the trial court's finding that SYSTRA will suffer "irreparable damage if the decision about personal jurisdiction is delayed" and dismiss the appeal. The relief requested by the Bannisters pursuant to their motion is denied since it is moot. See *In re*

4

*E.W.*, 2009-1589 (La. App. 1st Cir. 5/7/10), 38 So.3d 1033, 1037 ("An issue is moot when a judgment or decree on that issue has been 'deprived of practical significance' or 'made abstract or purely academic.'"). We review the propriety of the trial court's action of overruling SYSTRA's objection of lack of personal jurisdiction through review of the pending writ application. See *Herlitz Constr. Co., Inc. v. Hotel Investors of New Iberia, Inc.*, 396 So.2d 878 (La. 1981) (per curiam) (directing that an intermediate appellate court should consider and rule upon the merits of a supervisory writ, even if the alleged error can be corrected on appeal, when: (1) an appellate reversal will terminate the litigation; (2) there is no dispute of fact to be resolved; and (3) the trial court decision is arguably incorrect).

## PERSONAL JURISDICTION

The Louisiana Long Arm Statute provides for the exercise of personal jurisdiction over a nonresident defendant, who acts directly or by an agent, as to a cause of action arising from transacting any business in this state, contracting to supply services or things in this state, or causing injury or damage by an offense or quasi offense committed through an act or omission in this state. La. R.S. 13:3201A(1-3). Additionally, the Long Arm Statute provides for the exercise of personal jurisdiction over a nonresident on any basis consistent with the United States and Louisiana Constitutions. La. R.S. 13:3201B; *Crosstex Energy Servs., LP v. Texas Brine Co., LLC*, 2017-1405 (La. App. 1st Cir. 4/25/18), 253 So.3d 806, 810-11, writ denied, 2018-0881 (La. 9/28/18), 252 So.3d 919 (citing *Southeast Wireless Network, Inc. v. U.S. Telemetry Corp.*, 2006-1736 (La. 4/11/07), 954 So.2d 120, 124). The addition of Subsection B to the Long Arm Statute ensures that the long-arm process extends to the limits allowed by due process. *Id.* Thus, rather than focusing on the examples set forth in Subsection A, the sole inquiry into jurisdiction over a nonresident is an analysis of the

constitutional due process requirements. *Crosstex Energy Servs., LP*, 253 So.3d at 811.

Due process allows personal jurisdiction over a nonresident defendant when it has certain "minimum contacts" with the forum state such that maintenance of the suit does not offend traditional notions of "fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)) and *Southeast Wireless Network, Inc.*, 954 So.2d at 124-25). The defendant's contact with the forum state must be such that he should reasonably anticipate being haled into court in the forum state.

The minimum contacts between the nonresident defendant and the state must be based on some act by the defendant through which it purposefully avails itself of the privilege of conducting activities within the state and thereby invokes the benefits and protections of the state's law. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). This requirement ensures that the defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. *de Reyes v. Marine Mgmt. and Cons., Ltd.*, 586 So.2d 103, 106 (La. 1991). If the defendant deliberately engages in significant activities within a state or creates continuing obligations between itself and residents of the forum, it manifestly has availed itself of the privilege of conducting business there; because its activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require the defendant to submit to the burdens of litigation in that forum. *Id.*

Minimum requirements inherent in the concept of fair play and substantial justice may defeat the inference of reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. *Burger King Corp.*, 105 S.Ct. at 2184. The relationship between the nonresident and the state must be such

that it would be reasonable to require the nonresident to defend the suit in that state. The burden on the nonresident defendant is a primary concern. In appropriate cases, this burden will be considered in light of the other relevant factors such as the state's interest in adjudicating the dispute; the plaintiffs' interest in obtaining convenient and effective relief when that interest is not adequately protected by their power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the states in furthering fundamental substantive social policies. ***Boatwright v. Metro. Life Ins. Co.***, 95-1822 (La. App. 4th Cir. 9/28/95), 661 So.2d 169, 171-72 (citing ***World-Wide Volkswagen v. Woodson***, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and ***de Reyes***, 586 So.2d at 107).

The parties asserting that personal jurisdiction is proper have the initial burden of proving minimum contacts. If they satisfy this burden, a presumption of reasonableness of jurisdiction arises and the burden shifts to the opposing party to prove that the exercise of jurisdiction would not meet the due process fairness inquiry. An appellate court conducts a de novo review of a trial court's legal ruling on an exception of lack of personal jurisdiction and a manifest error review of any factual findings underlying the ruling. ***Crosstex Energy Servs., LP***, 253 So.3d at 811-12.

On appeal, SYSTRA asserts that the record is devoid of the necessary evidence to establish that it had sufficient minimum contacts with Louisiana. In support of its objection of lack of personal jurisdiction, SYSTRA submitted into evidence the affidavit of its secretary, Garry Hartwig. Hartwig attested that, based on his knowledge of SYSTRA's corporate history, SYSTRA has never manufactured, designed, or distributed asbestos or asbestos-related products. Additionally, he stated that SYSTRA has never been registered to do and has never done or contracted any business in Louisiana. According to Hartwig, in 2000,

7

SYSTRA became a registered corporation in New York after it purchased the stock of EI Associates, Inc. (EI Associates), another New York corporation.

The Bannisters contend that despite the lack of direct contacts between SYSTRA and Louisiana, SYSTRA is the successor to Ford, Bacon & Davis Construction Corporation (FB&D), for whom Mr. Bannister worked between 1966 and 1969 at multiple industrial facilities including the Commercial Solvents facility in Sterlington, Louisiana. They offered into evidence Mr. Bannister's record from the Social Security Administration showing his employer as SYSTRA during the years 1966 through 1969. They also point to discovery responses in which SYSTRA admitted that its tax identification number is identical to that formerly held by FB&D. And in further support of SYSTRA's relationship with FB&D, the Bannisters submitted into evidence discovery responses by SYSTRA acknowledging that EI Associates was formerly known as SFB Construction Corporation (SFB) and before that SFB was formerly known as FB&D. Thus, the Bannisters urge that the record demonstrates that "SYSTRA is FB&D" and, as the successor corporation, the contacts of FB&D should be imputed to SYSTRA thereby warranting the haling of SYSTRA into a Louisiana court.

Irrespective of whether FB&D had sufficient minimum contacts to permit Louisiana's exercise of personal jurisdiction over it directly, we find the record devoid of the necessary evidence to support a finding that imputation of those contacts to SYSTRA is warranted under the facts of this case.[2]

_____

[2] SYSTRA challenges the relevancy of the deposition testimony of Mr. Bannister and another employee who worked at the Commercial Solvents facility in Sterlington; the affidavit of a consultant attesting to the presence of known asbestos products at the Sterlington facility; and a contract for the installation of insulation between FB&D and a subcontractor, the latter of which SYSTRA avers has not been authenticated. The record shows the first time that SYSTRA raised its objections to this evidence was in a second supplemental memorandum subsequent to the September 17, 2018 hearing and prior to the December 20, 2018 hearing. At that later hearing, SYSTRA neither informed the trial court of its written objections nor requested a ruling. Because for purposes of this review we have assumed that FB&D had sufficient contacts with Louisiana to hale FB&D into court, we find it unnecessary to address the timeliness or correctness of SYSTRA's evidentiary objections.

Initially, we note that, despite the identification of SYSTRA as Mr. Bannister's employer in the Social Security Administration's records, it is undisputed that SYSTRA did not exist until 2000, making it impossible for it to have been Mr. Bannister's employer between 1966 through 1969. Moreover, according to SYSTRA's discovery responses, it has no record indicating that Mr. Bannister ever was employed by SYSTRA. As SYSTRA, through Hartwig, stated in his responses to deposition by written questions, SYSTRA apparently appears as Mr. Bannister's employer in the Social Security Administration's records because FB&D was a predecessor corporation that had the same tax identification number that SYSTRA currently holds. SYSTRA maintains that the sole reason it acquired EI Associates was to obtain a license to do business in New York as a professional engineering company in conformity with a New York law, enacted in 1935, prohibiting business corporations from practicing professions. SYSTRA contends that because FB&D was practicing as a professional engineering corporation at the time of the enactment of the New York legislation, SYSTRA was grandfathered in through acquisition of EI Associates.[3]

Admitted into evidence was the Stock Purchase Agreement between EI Associates and SYSTRA.[4] While the Bannisters suggest that the transfer of all of EI Associates' liabilities to SYSTRA would have necessarily included liability for damages arising from tortious conduct that EI Associates may have had and, therefore, constituted a contact sufficient to hale SYSTRA into court, we find this showing insufficient to warrant imputation of FB&D's liability for damages arising from tortious conduct directed at Mr. Bannister to SYSTRA.

---

[3] See N.Y. Educ. Law § 7209(6) (McKinney) (2016).

[4] The Stock Purchase Agreement was between EI Associates Group, Inc., the sole stockholder of the EI Associates stock, and SYSTRA USA, Inc., the parent company of SYSTRA. On review, the parties have not challenged the accuracy of this portion of the corporations' histories.

Conspicuously absent from this record are the agreements that transfer FB&D to SFB and SFB to EI Associates. Thus, we are unable to ascertain whether either or both of those agreements included transfers of all FB&D's liabilities such that at the time EI Associates conveyed its liabilities to SYSTRA pursuant to the Stock Purchase Agreement in 2000, any liability FB&D may have had for damages arising from tortious conduct while Mr. Bannister was in its employ would have transferred as well.[5] Given the lack of evidence in this record establishing that "SYSTRA is FB&D," the Bannisters did not sustain their initial burden of proving minimum contacts, and the trial court erred in imputing any minimum contacts FB&D may have had with Louisiana to SYSTRA.

Without imputation of FB&D's minimum contacts to SYSTRA, the maintenance of this litigation against SYSTRA offends traditional notions of fair play and substantial justice. Based on its purchase of EI Associates, a New York corporation, SYSTRA could not have reasonably foreseen being sued in Louisiana for potential liabilities a long-ago predecessor may have had. SYSTRA has had no contacts in Louisiana from which it availed itself of the privilege of doing business in this state, and this record simply does not support imputing any minimum contacts of FB&D to SYSTRA as a successor corporation. Accordingly, the trial court erred in overruling SYSTRA's exception of lack of jurisdiction over the person.

---

[5] We find no merit in the Bannisters' contention that the terms in the Stock Purchase Agreement, which identified actions or proceedings pending against EI Associates on the date of transfer including "Information Requests/Subpoena" regarding its receipt in March 1998 of a subpoena duces tecum for the employment records of an individual in conjunction with a Louisiana lawsuit, provided notice to SYSTRA that it could be haled into court in Louisiana to answer for possible damages to Mr. Bannister as a result of his alleged exposure to asbestos between 1966 and 1969 by FB&D. Nothing in the agreement references a transfer of FB&D's liabilities to EI Associates or its predecessor, SFB, so as to have made suit against SYSTRA as a successor to FB&D a foreseeable possibility.

## DECREE

For these reasons, we dismiss SYSTRA's appeal. The Bannisters' motion to dismiss the appeal is denied as moot. Pursuant to our supervisory jurisdiction, we reverse the trial court's interlocutory judgment, overruling SYSTRA's declinatory exception raising the objection of lack of jurisdiction over the person. We render judgment sustaining SYSTRA's declinatory exception raising the objection of lack of personal jurisdiction and dismiss SYSTRA from this litigation.

**APPEAL DISMISSED. MOTION TO DISMISS APPEAL DENIED AS MOOT. WRIT GRANTED. JUDGMENT REVERSED AND RENDERED.**

# STATE OF LOUISIANA
# COURT OF APPEAL
# FIRST CIRCUIT

## 2019 CW 0079
## and
## 2019 CA 0367

### DANIEL E. BANNISTER

### VERSUS

### SFB COMPANIES, INC. OF DELAWARE, ET AL.

**McDONALD, J., concurs.**

I respectfully concur. I agree with the majority's reversal, under our supervisory jurisdiction, of the district court's interlocutory judgment, overruling SYSTRA's declinatory exception of lack of jurisdiction over the person, and dismissing SYSTRA from this litigation. I also agree with the majority's dismissal of SYSTRA's appeal in this case, because the judgment is not appealable. Because the Bannisters' motion to dismiss also correctly pointed out that the judgment is not appealable, I think our opinion should grant their motion to dismiss the appeal, rather than dismiss their motion as moot.