**[J-26-2021] [MO: Saylor, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| TRUST UNDER WILL OF AUGUSTUS T. ASHTON, DECEASED DATED JANUARY 20, 1950 | : | No. 36 EAP 2020 |
| | : | |
| | : | Appeal from the order of Superior |
| | : | Court entered on 6/3/2020 at No. |
| | : | 3609 EDA 2018 affirming, reversing |
| APPEAL OF: ELIZABETH A. REED | : | and remanding the Order entered on |
| | : | 7/9/2018 in the Court of Common |
| | : | Pleas, Philadelphia County, |
| | : | Orphans' Court Division at No. 1039 |
| | : | ST of 1952. |
| | : | |
| | : | ARGUED: April 14, 2021 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                    **DECIDED: October 4, 2021**

I join the learned Majority in full. I write separately to emphasize that a vested beneficiary's equitable interest in the trust corpus is well-settled, both in this Commonwealth[1] and in many of our sister jurisdictions.[2]

Elizabeth Reed, citing *Jones v. Jones*,[3] rightly asserts that, "whatever the quantum of their distributive rights, current vested beneficiaries have an interest in and to the

---

[1]     *See, e.g.*, *Commonwealth v. Stewart*, 12 A.2d 444, 447 (Pa. 1940) (stating that, by virtue of her equitable interest in the corpus, the beneficiary "was entitled to enforce the trust, to have a breach of trust enjoined and to obtain redress in case of breach") (quoting *Blair v. Comm'r of Internal Revenue*, 300 U.S. 5, 13 (1937)).

[2]     *See, e.g.*, *Nat'l Shawmut Bank v. Cumming*, 91 N.E.2d 337, 338 (Mass. 1950) (referring to the trustee's "title" to, and the beneficiary's "beneficial interests" in, the corpus).

[3]     25 A.2d 327 (Pa. 1942).

corpus of the trust."[4]  In *Jones*, a wife brought suit for maintenance, seeking to reach property of her husband, who abandoned her and their children and took up residence in another state.  The property at issue included the husband's vested remainder interests in certain trusts.  One issue raised was whether these future interests were property for purposes of the wife's maintenance suit.  On appeal, this Court held that the husband's future interests were proprietary.  The Court explained:

> Academic authorities and essayists have for a long time debated the nature of a beneficiary's interest in a trust, some arguing that the right of a beneficiary is merely *in personam*, that is, only a right against the trustee without any right in the trust *res*.  We have in this state adopted the more realistic view . . . that, in addition to rights against the trustee, the beneficiary also has rights *in rem*, an actual property interest in the subject-matter of the trust, an equitable ownership of the trust *res*.[5]

Thus, Reed insists that, as a vested income beneficiary, she enjoys equitable rights in the corpus regardless of the impact on her specific pecuniary interest.[6]

Conversely, PNC Bank, N.A. ("PNC"), the Trustees of the University of Pennsylvania ("UPenn"), and the Office of the Attorney General ("OAG") (collectively, "Appellees") all adopt some variation of the same counterargument.  PNC maintains that *Jones* is irrelevant because the case "did not address standing at all," and Reed's "unremitting reliance on inapposite cases highlights that her theory of standing is devoid of legal support."[7]  Similarly, UPenn contends that Reed's equitable interest theory "lacks any legal foundation, is conclusory, and does not address how [her] interest has been

---

[4]     Appellant's Br. at 13.

[5]     *Jones*, 25 A.2d at 329 (cleaned up).

[6]     *See* Appellant's Br. at 21.

[7]     PNC's Br. at 41-42.

harmed or will be harmed."[8]  Finally, the OAG claims that Reed's equitable interest "makes no difference here."[9]  "No Pennsylvania case law suggests that such an ephemeral 'interest' has any bearing on the standing inquiry, let alone that it would be controlling in the present context."[10]

Appellees adopt a peculiarly myopic view of a vested beneficiary's interest in a trust.  They reason that so long as PNC's actions as trustee do not diminish Reed's $2,400 annuity, her interest remains unharmed and, thus, she lacks standing to object to PNC's actions.[11]  While an examination of the trust instrument is a necessary first step in determining what rights, if any, the settlor bestowed upon someone and whether those rights have been adversely affected, the inquiry cannot end there.  It has been this Court's longstanding position that a trust beneficiary's rights extend far beyond a defined pecuniary benefit and include both *in personam* rights against the trustee and an *in rem* equitable interest in the trust corpus.[12]  Further, this Court's decisions recognizing a beneficiary's equitable interest in the corpus align with federal and other States' decisional

---

[8]     UPenn's Br. at 30.

[9]     OAG's Br. at 23.

[10]    *Id.*

[11]    *See* PNC's Br. at 30 ("Ms. Reed does not object to any aspect of the Fourth Account that relates to her annuity, nor could she have because the Trust paid the annuity in full every year during the accounting period (and every year prior to that)."); UPenn's Br. at 19 ("Ms. Reed's interest has not been harmed as she has been paid in full each year since the Trust was funded."); OAG's Br. at 21-22 ("Ms. Reed's only actual interest in the Ashton Trust—her ongoing fixed annuity—has not been, and will not be, harmed in any way.").

[12]    *See, e.g.*, *In re McEwen's Estate*, 33 A.2d 14, 16 (Pa. 1943).

law,[13] and our earlier decisions endure despite the passage of the Uniform Trust Act in 2006.[14]

There are those that argue that a beneficiary's equitable interest muddies the conceptual waters.[15] But I disagree. As one commentator explained, equitable interests pose no serious analytical problems:

> Those who advance the view that the beneficiary has a property interest in the trust assets admit that the trustee has the ownership so far as the records are concerned; in other words, . . . a title which is now designated, by reason of that fact, as the *legal title*. Nevertheless by reason of the fact that under certain circumstances the equity courts would have recognized the beneficiary as the actual owner, they assert that his interest is so great that it amounts to a form of ownership, which, because of the sole forum in which it could formerly be enforced, is designated as an *equitable interest* or as *equitable ownership*.
>
> Unfortunately the use of these terms, *legal ownership* and *equitable ownership*, has produced confusion in that they have conveyed the impression that property held in trust is the subject of a double and conflicting ownership. . . . Nevertheless it is the conclusion of the author of

---

[13]    *See, e.g.*, *N.C. Dep't of Revenue v. Kimberley Rice Kaestner 1992 Family Tr.*, ___ U.S. ___, 139 S. Ct. 2213, 2218 (2019); *Steinhart v. Cty. of Los Angeles*, 223 P.3d 57, 72 (Cal. 2010); *Chase Manhattan Bank v. Gavin*, 733 A.2d 782, 795 (Conn. 1999); *Gordon v. Gordon*, 129 N.E.2d 706, 708 (Ill. 1955); *In re Estate of Keenan*, 519 N.W.2d 373, 376 (Iowa 1994); *Roth v. Lehmann*, 741 S.W.2d 860, 862 (Mo. Ct. App. 1987); *van Oosting v. van Oosting*, 521 N.W.2d 93, 97 (N.D. 1994); *Goralsky v. Taylor*, 571 N.E.2d 720, 722 (Ohio 1991); *Perfect Union Lodge No. 10, A.F. & A.M. v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988). *But see, e.g.*, *Crosstex Energy Servs., LP v. Tex. Brine Co.*, 253 So.3d 806, 812 (La. Ct. App. 2018) ("A trustee is the person to whom title to the trust property is transferred. LSA-R.S. 9:1781. Under Louisiana law, title to the trust property vests in the trustee alone, and a trust beneficiary has no title to or ownership interest in trust property, but only a civilian 'personal right' vis-a-vis the trustee, to claim whatever interest in the trust relationship the transferor of the property (the settlor) has chosen to bestow.").

[14]    *See* 20 Pa.C.S. § 7706 ("The common law of trusts and principles of equity supplement this chapter, except to the extent modified by this chapter or another statute of this Commonwealth.").

[15]    *See generally* BOGERT'S THE LAW OF TRUSTS AND TRUSTEES § 183 (noting that the terminology used by the courts "does not provide much guidance").

the present study that any difference of opinion on this particular item of a beneficiary's rights is more a matter of words than of substance. In numerous situations under the common law . . ., two or more persons are interested in the same property. Though in fact only one is the owner, the other has rights so closely resembling ownership that he is frequently spoken of as the owner.[16]

Moreover, the trustee holding legal title to, and the beneficiary holding an equitable interest in, the corpus is a key requirement of a valid trust because the merger of legal title and equitable interest may defeat a trust.[17]

Applying the above principles here, Reed's $2,400 annuity, a pittance compared to the $73 million corpus, nonetheless grants her an equitable interest in the corpus. PNC may hold legal title to the corpus as trustee, but Reed's and the other beneficiaries' interests in the corpus nonetheless confer a form of ownership: an equitable interest. This is only logical because Reed and the other named beneficiaries were the natural objects of the settlor's bounty. The fact that Reed only has a right to $2,400 per annum for life, "and not a greater interest, as, for example, an estate in remainder or a power of appointment of the corpus, obviously goes merely to the quantum of her equitable estate in the trust *res* and not to the existence of such an estate."[18] Consequently, Appellees' claims that Reed lacks standing because her annuity represents an infinitesimal fraction

---

[16]     Rufford G. Patton, *The Nature of the Beneficiary's Interest in a Trust*, 4 U. MIAMI L. REV. 441, 448-49 (1950) (emphasis in original). *Accord* Austin Wakeman Scott, *The Nature of the Rights of the "Cestui Que Trust"*, 17 COLUM. L. REV. 269, 271 n.9 (1917) ("Another maxim to which resort is sometimes had . . . is that 'equity regards that as done which ought to be done.' . . . The idea usually intended to be expressed [by the maxim] is that equity considers that one who has a right to certain property should be regarded, for some purposes at least, as having an equitable interest in the property analogous to the legal interest of a legal owner of the property.") (citation omitted); *id.* at 272 ("Equity, looking to the substance rather than to the form, has dispensed with many of the formalities which were near and dear to the heart of the law [of property] . . . .").

[17]     *See* 20 Pa.C.S. § 7732(a)(5) ("A trust is created only if . . . the same person is not the sole trustee and sole beneficiary of the trust.").

[18]     *Stewart*, 12 A.2d at 448.

of a percent of the corpus,[19] or that the trust has more than ample assets to fund Reed's annuity,[20] are irrelevant to determining whether Reed's interest in the corpus exists. It does, and PNC's alleged self-dealing and requests for retroactive commissions and approval of a new fee schedule adversely affect Reed's *equitable* interest because PNC's actions may adversely affect the corpus. Therefore, Reed has standing to challenge PNC.[21]

Appellees' claims that Reed's equitable interest in the corpus is "inapposite," "conclusory," "ephemeral," and "makes no difference here" boggle the mind. Appellees avoid the issue of a beneficiary's equitable interest in the corpus at the cost of coherence. They would subordinate the very bedrock idea of an equitable interest in the corpus to the expedient of an *ad hoc* test asking whether they have sufficiently mismanaged the trust to their own benefit to warrant relief, subverting time-honored precedent along the way. Were we to endorse pecuniary harm as the baseline test for trust beneficiary standing, we would recognize standing in theory while denying it in all but the most extreme cases of self-dealing or neglect.[22] Dangling recourse to the law before certain beneficiaries while barring access recalls Kafka:

> Before the Law stands a doorkeeper. To this doorkeeper there comes a
> man from the country and prays for admittance to the Law. But the
> doorkeeper says that he cannot grant admittance at the moment. The man

---

[19]     *See* UPenn's Br. at 12-13.

[20]     *See* PNC's Br. at 34.

[21]     *Accord Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009) ("An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation.").

[22]     *See* Maj. Op. at 14-16.

> thinks it over and then asks if he will be allowed in later. "It is possible,"
> says the doorkeeper, "but not at the moment."[23]

Cowed by the doorkeeper, the man from the country never again seeks to cross the threshold. Appellees would have this Court and the lower courts stand in the shoes of Kafka's doorkeeper and impose that same meekness on Reed and other similarly situated beneficiaries across the Commonwealth. The law of trusts does not countenance such an imposition.

---

[23] FRANZ KAFKA, *Before the Law*, *in* THE METAMORPHOSIS AND OTHER STORIES 148, 148 (Willa Muir & Edwin Muir trans., Schocken Books 1975) (1915).